## SIMEON B. BELL v. T. W. WRIGHT.

1. LEASE OF LAND, *Ended—Conveyance, Enforceable.* The plaintiff and defendant entered into a written contract, by which the defendant leased to the plaintiff a certain piece of land for the period of ten years, unless the lease should sooner be terminated by the act of the parties. The plaintiff was to do certain things with regard to the land, and a failure to do these things was to render the lease void. The plaintiff was also given the right, at his option, to purchase the property within two years. The plaintiff did not perform all the stipulations contained in the lease, but the defendant did not claim any forfeiture on account thereof; but, both expressly and impliedly, waived such forfeiture. He impliedly waived the forfeiture by receiving the benefits of the lease after he had full knowledge of the plaintiff's failures. The lease remained in full force up to nearly the end of the two years, when the plaintiff exercised his option to purchase the property, and tendered the full amount of the agreed price, with a sufficient amount in addition thereto to cover all losses which the defendant might have sustained by reason of any failure on the part of the plaintiff. *Held,* That the exercise of such option, and the tender of the purchase-money, etc., terminated the lease and bound the defendant to convey the property to the plaintiff.

2. TENDER OF PURCHASE-MONEY, *Insufficient Reasons for Refusing.* In such case the defendant refused to accept the tender, on the ground that the plaintiff had not paid certain taxes which he had agreed to pay, and which the defendant himself had paid; and that he had not built a certain fence which he had agreed to build, and which was not yet built; but *held,* that the performance of these things was immaterial, for the reasons, among others, that the plaintiff at the time of said tender, tendered the full amount of the taxes and a sufficient amount in addition thereto to cover all damages or loss which the defendant had sustained by reason of any failure on the part of the plaintiff; and the

plaintiff was not bound to build the fence within two years, and was not bound to build it at all, if he exercised his option to purchase the property within two years.

3. WRITTEN CONTRACT—*Parol Contract—Practice—Defense.* On the trial of the case, the defendant claimed that some time after the said written contract was entered into by the plaintiff and defendant, the plaintiff and defendant entered into a separate parol contract, whereby the plaintiff agreed to pay to the defendant ten per cent. interest on the purchase-money, and that the plaintiff did not at any time tender such interest. These questions, however, have really at no time been in the case, for they were not properly brought to the attention of the court below by the pleadings or otherwise. The pleadings in the court below admitted that the written contract *embodied the contract between the parties,* and no claim was made by the defendant in his answer that any other contract, either in writing or by parol, was ever made, or that any change or modification of the original written contract was ever made; and neither did the defendant in his answer, or at the time of the tender of the purchase-money, make any claim that the tender was not sufficient because the plaintiff did not tender said interest. A defendant generally has no right to rely upon any defense except such as he has set up in his answer.

4. TENDER OF DEED, *Not Necessary.* The defendant also claims that a deed for the land, filled up and ready to be executed, should have been tendered to the defendant at the time said tender was made. But this was immaterial, for the defendant refused absolutely to execute any deed.

*Error from Wyandotte District Court.*

ACTION by *Wright* against *Bell,* to compel the specific performance of a contract for the sale of certain land situate in Wyandotte county. July 31, 1883, judgment was rendered for plaintiff. Defendant brings it here for review. The facts are stated in the opinion.

*D. B. Hadley,* for plaintiff in error.

*Bryant, Holmes & Waddill,* and *J. B. Scroggs,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action to compel the specific performance of a contract for the sale of certain real estate

situated in Wyandotte county.    The contract of sale is embodied in a certain written instrument, which reads as follows:

"Article of agreement made and entered into this 21st day of February, 1880, between Simeon B. Bell, of the first part, and T. W. Wright, of the second part, witnesseth: That the said Simeon B. Bell, of the first part, rents, leases, and bargains to the party of the second part a certain tract of land described and bounded as follows, namely: Commencing one hundred and fifty feet southwest of the culvert near the old graveyard on the Rosedale and Kansas City road; running northeast along said road, southwest side, four hundred and seventeen feet to the stone retaining-wall; thence northwest to a tall walnut stump in the cabbage patch; thence west to a large hollow walnut stump; thence south of west to old locust stump; thence southwest across the spring run to big lone elm tree; thence to place of beginning.    The same to be enlarged or contracted upon an accurate measurement, so as to contain three acres: To have and to hold said land for stock, fruit, and gardening purposes for a period of ten years from this date.    The gas well is included in said lease.

"In consideration of which, the party of the second part agrees to pay to said Bell the sum of thirty dollars per year, the sum of seven dollars and fifty cents quarterly, in advance; to pay all lawful taxes on said land when due; to fence said land with a good five-board fence, except along the Rosedale road, and to maintain and keep in repair all of said fence while in possession.    And it is further agreed by these parties, that this lease is transferable, and that all buildings erected on said land may be removed unless the parties in interest can agree on the purchase and sale of the same; but that all shade trees and fruit trees, bushes, small fruit, shrubs, vineyards and berry plants, shall be preserved, and fences also shall be left and remain on said premises as part of the same.    And further, that if the above stipulations are not fulfilled and complied with, that such failure at any time renders this lease void, and that the property reverts to the original owner.    Further, the said Simeon B. Bell agrees to take three hundred and fifty dollars ($350) per acre for said land if purchased and paid for within two years.    Said lease to take effect March 1, 1880.

"In witness whereof, we have hereunto set our hands and seals, this 21st day of February, 1880.

SIMEON B. BELL.<br>T. W. WRIGHT."

After the issues were all properly made up by the filing of a petition, answer and reply, the case was referred to a referee, who tried the case and made special findings of fact and of law, and reported the same to the district court, where judgment was rendered in favor of the plaintiff and against the defendant, requiring the defendant to specifically perform the contract and to pay the costs of suit. The defendant, not being satisfied with this judgment, brings the case to this court and asks that the judgment may be reversed.

T. W. Wright, the defendant in error, was the plaintiff in the court below; and Simeon B. Bell, the plaintiff in error, was the defendant in the court below. The plaintiff in the court below alleged in his petition, among other things, that within two years of the making of the said contract, he exercised his option to purchase the property in controversy, and tendered to the defendant the amount required to purchase the same; but that the defendant below refused to convey the property to the plaintiff; and therefore the plaintiff prayed in his petition that the defendant be compelled to specifically perform his contract by conveying said property to the plaintiff.

Under the foregoing contract, the plaintiff went into the immediate possession of the property, and proceeded at once to erect a house thereon, and to make other lasting and valuable improvements thereon, of the aggregate value of several hundred dollars; he also dug a well, planted trees, shrubbery, etc., and made other improvements of a fixed and permanent character, and such as cannot well be removed from the premises; and he has remained in the possession of the premises ever since he first took possession thereof.

It will be seen, by an inspection of the foregoing contract, that the plaintiff below agreed to perform three things as a consideration for his use of the property *ten years* as a lessee thereof, to wit: (1.) He agreed to pay, as rent for the use of the property, $30 a year, in payments of $7.50 quarterly, in advance. (2.) He agreed to pay all the lawful taxes on the

land "when due." (3.) He agreed "to fence said land with a good five-board fence, except along the Rosedale road, and to keep in repair all of said fence while in possession."

But the plaintiff did not agree to do anything as a condition precedent to the exercise of his option to purchase the property. He had the right to exercise this option to purchase the property at any time within two years after making the contract; even on the next day thereafter; before the commencement of the lease; before he took possession of the property; before he paid any rent thereon; before he paid any taxes; before he fenced the land; and before he repaired any of the fences: and if he had done so, he would certainly never have been required to do any of these things, for evidently whenever he exercised his option to purchase the property he terminated the lease, and released himself from the performance of all things not yet due by virtue of the stipulations contained in the lease. He however allowed the lease to continue in force for the period of nearly two years, and so did the defendant. Neither of them attempted to terminate the lease at any earlier period of time. The plaintiff paid the rent regularly, in quarterly payments, as he agreed to do, for the period of two years, and up to March 1, 1882, and the defendant received the same. The plaintiff did not, however, pay the taxes due upon the land "when due," and about December 20, 1881, the defendant paid the same, which amounted in the aggregate to $25.85. In a very few days after, however, the plaintiff tendered this amount to the defendant, and the defendant refused to accept the same, but did not at that time, or at any other time before or afterward, within the two years, claim any forfeiture of the lease or of the contract, on account of this failure of the plaintiff to pay the taxes; but, on the contrary, expressly as well as impliedly waived such forfeiture; allowed the plaintiff to continue in possession of the property, and to use the same, and continued to receive the rent from the plaintiff, as he had previously done, up to the end of the two years. The continuance to receive the benefits of the lease

was certainly an implied waiver of the forfeiture. Neither did the plaintiff build the fence which he had agreed to build, nor did he repair the same. But he was not required to build the fence within the two years. The contract does not specify when he was to build the fence. It would therefore seem that the plaintiff would not and could not be in default because of any failure to build the fence, unless the property should finally revert to the defendant; and unless the plaintiff up to the time of such reversion, which might be ten years under the lease, or never under the contract for the purchase and sale of the property, should utterly fail to build the fence. It is now the intention of the plaintiff, and has been since February 21, 1882, that the property shall never revert to the defendant, and if it does not, then it is immaterial to the defendant whether the fence is built at all or not. And as the fence was not built prior to the time when the plaintiff exercised his option to purchase the property, the failure to keep such fence in repair was also rendered immaterial. And the defendant did not claim any forfeiture even of the *lease*, (saying nothing about the contract of purchase,) because of such failure to build the fence or to keep the same in repair. Indeed, at the time the plaintiff exercised his option to purchase the property, the lease was still in full force, though the plaintiff still owed the defendant $25.85, the amount of the taxes which the defendant had previously paid on the property, which of course the plaintiff must pay. But as the plaintiff has exercised his option to purchase the property, he may now fence the same, or not, at his option.

On February 21, 1882, the plaintiff tendered to the defendant the sum of $1,100. This amount covered the contract price of the land in controversy, and the sum of $50 in addition thereto, which sum of $50 was intended and was sufficient to repay the taxes which the defendant had paid, and to cover any and all damages or losses which the defendant might have sustained by reason of any failure on the part of the plaintiff to perform any of the stipulations contained in the written contract which he had agreed to perform. This

16—31 KAS.

tender was absolute and unconditional; but the defendant nevertheless refused to accept the same, and refused absolutely to convey the property to the plaintiff.

The referee finds that—

"Defendant refused to accept the same, and refused to make a deed, and assigns as his sole and only ground for such refusals the non-payment of said taxes, and plaintiff's default in making the fence mentioned in the contract, and told plaintiff then and there to make said fence and pay said tax before making tender, but said nothing about interest at the time of refusing tender of purchase-money."

The defendant now claims that the tender was insufficient, and claims that it was insufficient for still other reasons than those mentioned by him when the tender was made. The defendant now claims that the tender was insufficient, because the plaintiff did not also tender ten per cent. interest on the purchase-money. On the trial before the referee, the defendant testified, among other things, that within two or three days after the time when the defendant paid the taxes, the plaintiff came to him and had a conversation with him, a portion of which conversation is hereafter given. A portion of the defendant's testimony on this subject is as follows:

"He [the plaintiff] was scarlet in his face. He thought I had paid tax and wanted to take advantage of him. I said I did not. . . . I said inasmuch as he had put on some improvements, if he would pay me 10 per cent. interest from date of lease, I would still make him a deed. He assented, and said he would do it. This was a few days after I had paid the taxes. He was excited, and said I was trying to take his home from him."

Upon this same subject the referee finds that the plaintiff did promise the defendant that he would pay such interest; but also finds that "such promise was without consideration, and was made while the plaintiff was in a state of great excitement, induced by the fear that he was about to lose the land."

Now so far as this case is concerned, we do not think that it makes any difference whether any such parol contract was

entered into between the plaintiff and the defendant, or not; or whether it was without consideration, or not; or whether the plaintiff was in a state of great excitement, or not; for no such question as these matters involve has ever in fact been in the case. It was admitted by the pleadings in the court below that the written instrument which we have already quoted, *embodied the contract between the parties;* and no claim was made by the defendant in his answer that any other contract, either in writing or by parol, was ever made, or that any change or modification of the original written contract was ever made; and the defendant in his answer made no claim that the tender made by the plaintiff was not sufficient for the reason that the plaintiff did not tender any amount for interest on the contract price of the land. Upon this subject the defendant, in his answer, uses the following language:

"Defendant further says, that at the time said plaintiff made the tender of the money in February, 1882, he fully notified said plaintiff that he would have to comply with the terms of said contract in payment of taxes and building fence before defendant would convey said land, and that if he complied with said terms before two years expires, that then he would sell and convey the said land as set out in said contract."

It will therefore be seen from the answer of the defendant and the finding of the referee, that the only ground upon which the defendant refused the tender was that the taxes had not been paid and that the land had not been fenced. Now the plaintiff tendered more than enough to pay the taxes and all possible damages; tendered it absolutely and unconditionally, and did not even intimate that he desired any change back; and, as before stated, the plaintiff was not in default with regard to the fence; and besides, as the plaintiff had concluded to purchase the land, it was immaterial to the defendant whether the fence was built, or not; and the question as to the defendant's right to receive interest on the purchase-money was not in the case.

The above-quoted paragraph from the defendant's answer

shows that the defendant *relied entirely upon the original written contract;* and that he did not intend to make any defense under the subsequent parol contract. And a defendant generally has no right to rely upon any defense except such as he has set up in his answer. But the defendant now also claims that a deed for the land, filled up and ready to be executed, should have been tendered along with the money tendered. But as the defendant refused absolutely to execute any deed or any conveyance, this was unnecessary.

The defendant also claims that the land should have been surveyed before the plaintiff asked him to execute a deed therefor. Now this was not essentially necessary, though it would have been much better to have had the land surveyed first; but it devolves upon the defendant as much as upon the plaintiff to have such survey made. Besides, the defendant did not refuse the tender because of any want of a survey. The defendant also claims that one Emmet Werk should have been made a party to the case. Werk was not a necessary party. Besides, no question with reference to this matter was raised in the court below. (See §§ 89 and 91 of the Civil Code.)

We perceive no substantial error in this case. With reference to the main question involved in the case, see *Hagar v. Buck,* 44 Vt. 285; same case, 8 Am. Rep. 368.

The judgment of the court below will be affirmed.

All the Justices concurring.