[Filed January 30, 1888.]

# W. S. POWELL, RESPONDENT, *v.* DAYTON, SHERIDAN & GRAND RONDE R. R. CO. APPELLANT.

LANDLORD AND TENANT—LEASE WITH PRIVILEGE OF PURCHASE—WASTE.—A tenant in possession, under a lease containing a clause conferring upon him the privilege of purchasing the demised premises, having failed to exercise his said privilege within the time allowed, is liable for waste committed on the premises during his possession.

SAME—STATUTE OF LIMITATIONS.—Under a lease containing a clause for the purchase of the demised premises within a specified time, the Statute of Limitations does not commence to run against an action for waste until the privilege is extinguished by lapse of time.

SAME—REMEDIES—ELECTION OF.—In such action for waste committed by such tenant, it is no bar to plead that the landlord had brought an action for the purchase price stipulated in the lease, which action was dismissed because the plaintiff therein failed to show a compliance with the contract on his part, by a tender of the deed at the proper time, the remedies not being concurrent.

RECEIVERS—CORPORATIONS.—In an action of the above and foregoing character, it is no defense to the same to show that at the time of the grievances complained of, the defendant (railroad company) was in the hands of a receiver.

APPEAL from Yamhill County.   Affirmed.

*Whalley, Bronough, & Northup,* for Appellant.

*James K. Kelly,* for Respondent.

LORD, C. J.—This is an action to recover damages for waste. The defendant went into possession of the described premises under the following instrument:—

"That said Powell hath and doth hereby let and lease to the said railroad company his warehouse property, together with all the rights, privileges, and appurtenances thereunto belonging, situated in the town of Dayton, Yamhill County, Oregon, and more particularly described as follows: Lots Nos. five (5) and six (6), and lots Nos. thirty (30), thirty-one (31), thirty-two (32), and thirty-three (33), in the ——— of said town of Dayton, as laid out and recorded by Joel Palmer and Andrew Smith, to have and to hold the same for the sole use and benefit of said railroad company for the term of five years, commencing with July 1, 1878, on the following terms, to wit: The said railroad company shall and doth hereby contract and agree to pay the

said W. S. Powell for the rent and use of said lots, warehouse, and the streets between said lots, together with the frontage of said lots on the Yamhill River (all of which is hereby included in this contract), the sum of fifty-five dollars ($55) per month in United States gold coin, and shall further, and doth hereby contract and agree to purchase of said Powell, and pay the said Powell, on or before the expiration of the said term of five years, the sum of five thousand five hundred dollars in United States gold coin, for all the said described warehouse property, lots, right to said street, river frontage, etc., owned by said Powell, as aforesaid; and on the said payment by the said company, its associates, successors, or assigns, to the said Powell, his executors, assigns, or legal representatives, the said sum of fifty-five hundred dollars, the said Powell contracts and agrees to make and deliver to said company, or its legal representatives herein, a good and sufficient deed, in fee-simple, for said property. And for the faithful performance of this contract, the parties here bind their successors, heirs, assigns, and legal representatives.

"In witness whereof we have hereunto set our seals and the signatures of said Powell and the officers of said company.

"W. S. POWELL.    [SEAL.]

"The Dayton, Sheridan, and Grand Ronde Railroad,

"By ELLIS G. HUGHES, President.    [SEAL.]

"The Dayton, Sheridan, and Grand Ronde Railroad.

"By F. E. BEACH, Secretary."    [SEAL.]

The complaint is based on an alleged failure of the defendant to make tenantable repairs, and for voluntary and permissive waste. The defendant denied this, and set up five separate and further defenses, in substance as follows: (1) That it was dissolved and ceased to exist as a corporation on the 2d of June, 1879, and hence could not be sued at the time this action was brought; (2) that the acts of negligence alleged were barred by the Statute of Limitations; (3) that the said acts of negligence occurred while the property was in the possession of a receiver of the United States court, and hence, that the defendant was

not responsible therefor; (4) that all the damage alleged was the result of inevitable accident; (5) that the whole matter was barred by the former action, or by an election of remedies. Upon issue being joined, a trial was had which resulted in a verdict and judgment for the plaintiff. At the outset, it may be observed that the instrument referred to contained two distinct and several agreements, namely, a lease of and a contract for the sale of the described premises.

For present purposes, it is sufficient to say, by its terms, the defendant could put an end to the lease under which he took possession at any time during the term, or at its expiration, by exercising its right to purchase the demised premises, and hence, whether the relation of landlord and tenant should continue during such term, when the alleged waste occurred, depended upon the option or choice of the defendant. In all leases there are implied covenants unless expressly excluded. These implied covenants form as much a part and parcel of the contract, as if actually written or incorporated therein. When the effect of a contract is to invest a party with a legal right, such right exists as much for his benefit and protection as if expressly stipulated. The law implies an obligation on the part of the tenant to use the premises leased in a proper and tenantable manner, and not to expose the buildings to ruin or waste by acts of omission or commission. "But in every lease there is," said Mr. Chief Justice Waite, "unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to use the property as not unnecessarily to injure it," or, as it is stated by Mr. Comyn, "to treat the premises demised in such manner that no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the wilful or negligent conduct of the lessee." (Com. Land. & Ten. 188.) This implied obligation is a part of the contract itself, as much so as if incorporated into it by express language. It results from the relation of landlord and tenant between the parties which the contract creates. (*Holford* v. *Dunnett*, 7 Mees. & W. 352.) It is not a covenant to repair generally, but to so use the property as to avoid the necessity for repairs, as far as possible.

(*Horsefall* v. *Mather,* 7 Holt, 9 ; *Brown* v. *Crump,* 1 Marsh. J. J. 569 ; *United States* v. *Bostwick,* 94 U. S. 66.)   Nor is there any dispute so far as relates to the contract of lease that it contained any express covenant inconsistent with, or intended to exclude the operation of such implied covenant.   But it is said that the right to purchase the premises with which the defendant is invested at any time during the term under the contract of sale is contradictory of, and inconsistent with such implied covenant or obligation, and hence, it must be considered as excluded, or as expressly covenanted against.

In this view it would result that the plaintiff has no cause of action.   But is this the effect of that contract?   It is indisputably true that the two contracts cannot be in force and operation at the same time.

While the contract of sale remains dormant or unexerted, necessarily, the lease is in full operation and effect, with all the incidents and implied obligations which result from the relation of landlord and tenant.   The intent is that the lease shall remain intact while the contract of sale remains unexecuted. The exercise of the right to purchase during the term extinguishes the lease, and thus terminates the relation of landlord and tenant, and creates at once the relation of vendor and vendee.   The effect is not simply to nullify the implied covenant to use the property in a tenant-like manner, leaving the lease in all other respects in full force and operation, but to blot out of existence the lease, with all its incidents, express or implied.   Until put in force the contract of sale was not antagonistic to the lease; for the instant vitality was infused into it, there was no lease, and the relation of landlord and tenant was thereby determined.

The two contracts could not be operative and co-exist, and hence, the contract of sale could not have the effect to modify or otherwise affect any provision of the lease, express or implied, while it was in force.   While, therefore, the defendant refrained from exercising the right to purchase, and thus allowed the relation of landlord and tenant to continue, it was impliedly bound to treat the demised premises in such manner that no

substantial injury should happen, and to make the tenantable repairs. In such case the rule is that an action may be maintained on such implied covenants in like manner as if the instrument had contained express covenants to perform them. (*Frey* v. *Johnson,* 22 How. Pr. 316.)

It is next urged that the action is barred by the Statute of Limitations. The evidence shows that the injuries complained of occurred more than six years before the commencement of this action. Upon this state of facts, the counsel for the defendant asked, and the court refused to give the following instruction, which is alleged as error: "The plaintiff cannot recover damages in this action for any injury that occurred to the property mentioned in the complaint, if such injury occurred more than six years before the commencement of this action. If, therefore, you find that the warehouse, which is alleged to have been carried away by the water, was so carried away more than six years before the commencement of this action, the plaintiff cannot recover for any damages that may have resulted to him by the washing away of said warehouse." The contention of counsel for the defendant upon this point may be thus summarized: (1) That the relation of landlord and tenant existed between the parties at the time the alleged injury occurred, or was committed; (2) that the reversion was in the plaintiff during the whole term; and, therefore, (3) that for any damage done to the reversion, an action would lie from the moment the negligent or wrongful act was committed. The cases cited in support of this view, and principally relied upon to sustain it, are, *Provost etc.* v. *Hallett,* 4 East, 489; *Agate* v. *Lawenbein,* 57 N. Y. 604. When there is no other contract between the parties in reference to the subject-matter *except the lease,* as in the cases cited, the correctness of the argument need not be disputed. The question then is, whether the tenant, at the time the wrongful act was done, caused an injury that then affected the plaintiff as to his reversion. When, however, there is lying alongside of the lease in the same instrument a contract to purchase the subject-matter demised, which at any time during the term, and at the will of the tenant alone, may be put in force,

and thereby terminate the lease and absorb the reversion, the question then is, whether any right of action for such injuries can be prosecuted while such right to extinguish the lease and own the inheritance remains. In a word, was not the effect of the contract of sale to postpone any remedy under the lease until the time expired in which the contract of sale was to be executed? Now the action brought by the plaintiff is based on waste, which is defined to be "a spoil or destruction in houses, lands, or tenements to the damage of him in reversion or remainder. (Taylor's Landlord and Tenant, § 345; *Davenport* v. *Magoon,* 13 Or. 6.)

A reversion is defined by Blackstone to be: "The residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him." (2 Blackst. Com. 175.) Coke describes it as follows: "The returning of land to the grantor, or his heirs, after the grant is over." It seems then to have two significations: the one is an estate left, which continues during a particular estate in being; and the other is the returning of the land after the particular estate is ended. (Abb. Law Dict.) The reason which Mr. Comyns gives why the lessee is bound to treat the premises demised in such a manner that no injury may be done to the inheritance is, "that the estate may revert to the lessor undeteriorated by the wilful or negligent conduct of the lessee. (Com. Land. & Ten. 188.) Where no other contract exists between the parties but a lease, whether the estate shall revert after the termination of the particular estate, or the residue left in the landlord shall commence in possession after the particular estate is ended, is certain and irrevocably fixed from the nature of the contract, and hence, any wrongful act done which *then* causes an injury to the reversion, a right of action immediately accrues. The injury is immediate, though the enjoyment of the reversion is postponed until the expiration of the lease; but this is not our case. Here the instrument contained two contracts —a lease and a contract of sale.

After the execution of that instrument, as the defendant did not exercise its right to purchase, it must have entered into

possession of the premises under the lease; but it had the right or option at any time within five years after making such contract—even the next day thereafter—to purchase the property and thereby terminate the lease, and release itself from the performance of all things, express or implied, stipulated in the lease.

In any event, the property could not revert to the plaintiff until the expiration of the term of five years, nor could he, under the contract of sale, terminate the lease by tendering a deed, except on the expiration of such term. Not so with the defendant. It could put an end to the lease at any time during the term it chose to exercise its right to purchase the property, and as this right when exercised would change the relation of landlord and tenant into that of vendor and vendee, it would necessarily extinguish any claim which the plaintiff would have to recover damages for waste. Whether the estate would revert to him, or whether he would have a reversionary interest, depended wholly upon the will of the defendant for the period named. So long as such right of purchase lasted, the defendant had the unrestricted legal right to put in force the contract of sale and absorb the lease and reversion, and consequently the plaintiff could have no right of action for waste which it was not in the power of the railroad company to defeat or extinguish. The fact whether the estate should finally or ever revert to the plaintiff is not fixed and certain, but dependent exclusively upon the will of the defendant during the term and while the legal right to exercise it remains. There can be no act of waste committed during such term which the defendant cannot avoid by the exercise of such right to purchase. In such case the plaintiff's right of action can only be maintained when the defendant's right to purchase is gone or lapsed. It seems to us this result is inevitable. For, if the defendant chose to buy the property after the alleged waste was committed, which it had the undoubted right to do, it would, so to speak, repair its own wrong by taking to itself the reversion, and thereby extinguish any right of action for such alleged injuries resulting to it. The effect would be to determine the relation of landlord

and tenant, and the parties thereafter would stand in the rela-. tion of vendor and vendee under the contract of sale. (*Kerr* v. *Bradley*, 105 Pa. St. 191.) This shows that the right to buy which such contract gave to the railroad company might be used to defeat such action, and that while it lasted, the plaintiff's right to sue for injuries to the reversion must be postponed until the expiration of the term.

It seems somewhat anomalous, when the defendant could have terminated the lease at its option, and that the power to do so rested exclusively with it during the five years, and at the time, and after the alleged wrongful acts of waste were committed, that it should claim that the contract was inconsistent with the lease, when it failed or refused to supplant the lease by putting the contract in operation, or that the plaintiff had an immediate right of action for the injuries to the reversion, when it was in its power to take to itself such reversion, and deprive the plaintiff of his character as landlord, without which he cannot maintain this action. We do not think, therefore, there was any error in refusing to give the instruction asked, nor the instruction given by the court, to the effect that the remedy of the plaintiff was delayed until the expiration of the time mentioned in the contract, or further instruction that the plaintiff could not have maintained an action for waste during the time of the lease, because he would have been met by the contract, except as to the criticism in respect to the possession, which is not material.

The next assignment of error is to this instruction: "If, through the defendant getting into lawsuits, the property went into the hands of a receiver, this plaintiff is not responsible for that. He had nothing to do with that lawsuit; he is an outside party altogether. Although the other party might have been unfortunate, it would have to answer damages to Mr. Powell for any damages occurring. It was the defendant's business to deliver up the property at the end of five years in a good condition." It appears by the record that the alleged acts of waste, or at least the greater portion of them, occurred while the property of the railroad company was in the hands of a receiver. The counsel for the defendant contends, that aside from the

instruction being misleading in its concluding portion, that it
assumes that the defendant is responsible for the acts of the
receiver.  It is no doubt true, as the authorities cited show,
that it has often been held that a railroad company is not liable
for injuries inflicted by a receiver, or his servants, while the
property was in his possession as such receiver, and when it was
out of the possession of the railroad company and it had no
control over it.  (*Ohio etc. R. R. Co.* v. *Davis*, 23 Ind. 560;
85 Am. Dec. 477; *Metz* v. *Buffalo etc. R. R. Co.* 58 N. Y. 61; 17
Am. Rep. 201; *Davis* v. *Duncan*, 19 Fed. Rep. 477.)  In such
cases the possession of the receiver is not the possession of the
railroad company, but his possession is the possession of the
court by whom he is appointed and controlled.  Hence the acts
of the receiver are not the acts of the company, nor can it con-
trol the receiver or his servants.  The reason is, there is no
principle of agency existing between them, or relation of master
and servant, which renders the railroad company liable for the
acts of the receiver or his employees.  But how is this principle
to be evoked to excuse the defendant for the alleged waste.
There is no pretense that the plaintiff was in any way connected
with causing or asking for the appointment of a receiver for
the defendant, or that he has done any act which operates or
has operated to work an ouster or eviction.

The only question in the present action is, whether the cove-
nant is excused by the fact that the breach is caused by the act
of a stranger.  As before stated, the implied obligation of the
tenant to treat the premises in such a manner that no substantial
injury shall happen to them is as much a part and parcel of the
contract as if incorporated in it by express language.  "It
results from the relation of landlord and tenant between the
parties which the contract creates."  (*United States* v. *Bostwick*,
94 U. S. 66.)  Whenever a party by his own contract creates a
duty or charge upon himself, he is bound to make it good, if he
may, notwithstanding any accident by inevitable necessity,
because he might have provided against such liabilities by his
contract.  (Per Lord Ellensborough, in *Atkinson* v. *Ritchie*, 10
East, 530.)  "And, therefore," says Mr. Platt, "if a lessee cove-

nants to repair a house, though it be destroyed by lightning, or thrown down by enemies, yet he ought to repair it." (Platt on Covenants, § 582; *Paradine* v. *Jane*, Allyn, 27.) As a consequence of this doctrine of the law, in the absence of special agreement, a lessee is liable to his lessor for all waste by whomsoever committed, and may have his action over against the actual wrong-doer. (*Cook* v. *Champlain Trans. Co.* 1 Denio, 91; *Parrott* v. *Barney*, 2 Abb. Adm. 197.)

Said Beardsley, J.: "The plaintiff claims that the mill was destroyed by the wrongful acts of the defendants; and if so it was waste, for which the plaintiff being tenant for years was responsible." "It is common learning," said Heath, J., in *Attersoll* v. *Stephens*, 1 Taunt. 198, "that every lessee of land, whether for life or years, is liable in an action for waste to his lessor, for all waste done on the land in the lease, by whomsoever it may be committed." Chambers, J., said: "The situation of the tenant is extremely analogous to that of a common carrier to prevent collusion (and not the presumption of actual collusion); both are charged with the protection of the property intrusted to them against all but the acts of God and the king's enemies; and as the tenant in one case is charged with the actual commission of the waste done by others, so in the other case the carrier is charged with actual default and negligence, though he loses the goods by that which was irresistible, or by fraud, against which no ordinary degree of care and caution could have protected him." Lord Coke is not less explicit, for he says: "Tenants by the curtesy, tenants in dower, tenants for life, years, etc., shall answer for the waste done by a stranger, and shall take the remedy over." (4 Kent Com. 77; 3 Blackst. Com. 228; Com. Land. and Ten. 188; *Cook* v. *Champlain, supra; Austin* v. *Hudson R. R. R. Co.* 25 N. Y. 340.) As the defendant was bound to answer to the plaintiff for the waste, and had his remedy over against the receiver if wrong-doer, or apply to the court, who would not permit its possession to result in wrong, for the necessary protection or relief, it results that the plaintiff is entitled to recover, and there was no error in the instruction.

It is next claimed that the plaintiff by his former action for the purchase price waived his right to sue for damages under the lease, and by said election of remedies barred the present action. This must proceed on the assumption that the plaintiff had a right of action under the contract of sale at the time it was brought. The facts are that neither the defendant at any time during the term, or the plaintiff on its expiration, put the other in default, but permitted such contract to lapse, and consequently, as was held in *Powell* v. *D. S. & G. R. R. R. Co.* 14 Or. 356, no right of action could be based upon it, and the complaint was dismissed. If the plaintiff had infused vitality into that contract by tendering a deed, and then the defendant had refused to accept or perform under it, he would have had an action for the purchase price upon it; but then he would have had no lease, or right to bring an action for damages on it. This is not a case where the remedies are concurrent, and an election between them once being made, the right to follow the other is gone forever.

Upon the further point in respect to the dissolution of the defendant, it is sufficient to say that we are unable to reach the result claimed by counsel for the defendant, and upon the whole case think the judgment must be affirmed, and it is so ordered.