MAREN LARSEN, ARNOLD LARSEN, AND MOR-
RIS LARSEN, a Co-partnership, under the firm
name and style of LOUIS LARSEN SHEEP COM-
PANY,

*Plaintiffs and Respondents,*

vs.

THURE SJOGREN and ANNA HALL,

*Defendants and Appellants.*

(No. 2459; January 2, 1951; 226 Pac. (2d) 177)

448

450

452

For the defendants and appellants the cause was submitted upon the brief and also oral argument of J. J. Hickey of Cheyenne, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of Harold M. Johnson of Rawlins, Wyoming.

454

458

## OPINION

BLUME, Justice.

This is an action brought by Maren Larsen, Arnold Larsen, and Morris Larsen, a co-partnership, under the firm name and style of Louis Larsen Sheep Company, against Thure Sjogren and Anna Hall for specific performance of a contract to convey certain lands in Carbon County, Wyoming to the plaintiffs pursuant to an option contained in a lease. Judgment was in favor of the plaintiffs and the defendants have appealed to this court.

The plaintiffs herein constituted a partnership as above mentioned on November 9, 1940. On that date the defendant Sjogren, a single man, leased to the plaintiffs Lot 1, NE¼NW¼ of Section 31, Township 16 North, Range 87 West of 6th P. M., Lots 1, 2, 3, 4, 5, 6, 7 and 8 inclusive, and W½SW¼, NW¼, W½NE¼ of Section 25, Township 16 North Range 88 West of 6th P. M., containing 575.33 acres, more or less, in Carbon County, Wyoming, the lease being for a term of 10 years from November 1, 1940 at an annual rental of $115 payable in advance on or before the first of each year. The lease was duly recorded in the County Clerk's Office of Carbon County. It provided: "The lessees shall have the exclusive option and privilege of purchasing the above described premises at any time during the term hereby conveyed for the sum of Two Thousand ($2,000.00), and if this option is exercised by the lessees, then and in that event all subsequent rentals shall abate, and the lessees shall also have the option and privilege of renewing this lease on the same terms and conditions herein provided that they exercise their option not later than 30 days following the expiration hereof." The lease also contained the provision that the premises had

been received in good order and that lessees would re-deliver the premises at the expiration of the time mentioned in the lease in as good condition as it had been received, and would keep the premises in good repair, and "IT IS FURTHER AGREED by the said lessees that neither they nor their legal representatives will underlet said premises or any part thereof, or assign the lease, without the written assent of the said lessor had and obtained thereto, and that they will not use or permit the said premises to be used for any purposes prohibited by the laws of this State or of the United States." The lease contained the further provision that if the lessee should fail to perform any of the covenants and conditions therein, the lessor might without formal notice or demand, declare the term ended and re-enter the premises. The rentals provided in the lease were fully paid up to the time of the exercise of the option to purchase hereafter mentioned. On May 26, 1945 an agreement of dissolution was entered into between the partners above mentioned by reason of which Arnold C. Larsen withdrew from the above mentioned firm of Louis Larsen Sheep Company, and it was provided in the agreement that the Sjogren lease above mentioned should be assigned to Arnold Larsen. The dissolution agreement was recorded in Carbon County on December 28, 1945 and Sjogren testified that he had knowledge thereof. This agreement was never carried out. By subsequent oral agreement of the parties, the foregoing lease and other leases were retained as a part of the assets of the original partnership. The subsequent facts as found by the court are as follows: "Between June 10 and 17, 1948, Arnold Larsen, one of the plaintiffs, verbally notified Defendant Sjogren that the plaintiffs had elected to accept the option contained in the aforesaid lease, and on June 28, 1948 plaintiffs, through their attorney, tendered to Defendant Sjogren the $2000.00 purchase price as provided in said lease and

demanded a conveyance of the premises to plaintiffs, but defendant refused to accept the tender and to convey the premises, and at the time of such notice and tender Defendant Sjogren, being the owner of the land, merely made a general refusal without specifying any specific grounds for such refusal. On June 29, 1948 and after plaintiffs had notified him of their election to accept the option contained in said lease and had tendered the purchase price therein specified, defendant Sjogren conveyed to defendant Anna Hall, without consideration, and with full notice of plaintiffs' option and rights thereunder" part of the premises hereinabove mentioned. "On June 29, 1948 defendant Sjogren sent a written notice of cancellation of lease on the ground of non-payment of rent to plaintiffs by registered special delivery mail and then for the first time in their answer, defendants raised the question that the lease had been assigned, that plaintiffs had overgrazed the premises, built a reservoir thereon without lessor's permission, and allowed the fence to become in a state of disrepair, all in alleged violation of the terms of the lease and as grounds for cancellation thereof. No notice was ever given nor was any other attempt ever made to cancel the lease until after the plaintiffs had notified defendant Sjogren that they had elected to accept the option in said lease and had tendered said defendant the purchase price and demanded conveyance to plaintiffs of the land described in said lease subject to the option therein contained. Plaintiffs have at all times been ready, willing and able to pay the $2000.00 purchase price into court to be divided between the defendants according to their ownership in the real estate hereinafter described."

These findings of fact by the court appear to be sustained by the evidence in the case and, in fact, are not seriously questioned in any respect. After the dissolution of the partnership above mentioned, Maren Larsen and Morris Larsen constituted a new partnership, con-

tinuing to operate under the firm name of Louis Larsen Sheep Company. So we shall hereafter refer to that partnership as the new partnership, and the original partnership as the original or old partnership. Other incidental facts will be mentioned as we proceed in the discussion herein.

## 1. POWERS INCIDENTAL TO DISSOLUTION OF PARTNERSHIP.

As hereinbefore noted Arnold Larsen notified the defendant Sjogren that the plaintiffs would exercise the option given in the lease and he caused Sjogren to go to the office of Harold M. Johnson, the attorney for the plaintiffs, in order to carry out the agreement in reference thereto. Counsel for the appellants argue that after the dissolution of the partnership, Arnold Larsen had no authority whatever to do what he did in this connection contending that his actions were not in pursuance of winding up the partnership. The option mentioned in the lease seems to have been a valuable right. There is no reason to say that the right thereto could not be enforced by the original partnership after the dissolution thereof, the same as, for instance, a right to enforce a note or any other asset. Assuming that it was not intended that the old partnership should be continued merely for the purpose of holding the leases not actually assigned, the exercise of the right given to purchase under the option was, we think, at least incidental to the ultimate winding up of the partnership. In Section 61-602, Wyo. Comp. St. 1945 which relates to the uniform partnership act, it is stated: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." In 40 Am. Juris. 312, it is said: "While it is often said that the dissolution of a partnership terminates its existence, it is perhaps more accurate to say that dissolution de-

notes that change in the partnership relation which ultimately culminates in its termination. It is true that except for the purpose of winding up the business of the firm, a partnership ceases to exist immediately upon dissolution; yet it is hardly necessary to cite authorities for the proposition that after dissolution a partnership is considered as maintaining a limited existence for the purpose of making good all outstanding engagements, of taking and settling all accounts, and collecting all the property, means, and assets of the partnership existing at the time of its dissolution, for the benefit of all interested. This principle is recognized in the Uniform Partnership Act. Dissolution of a partnership terminates of course the general agency of partners growing out of the partnership relation, and implied power to act for the partnership, except so far as such agency and implied powers may be necessary to the winding up of the partnership business." In 68 C. J. S. 842, it is said: "There is an essential difference between 'dissolution' and 'termination' of a partnership, which is recognized in various statutes, including the Uniform Partnership Act, in that on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Accordingly, one of the partners in the absence of an agreement to the contrary has the power of the partnership in collecting and enforcing obligations due to it. Thus it is said in 68 C. J. S. 866:

"In accordance with the rule stated supra Section 351 that, notwithstanding dissolution, a partnership continues, in a limited sense, for the collection of firm debts or claims, it is the right as well as the duty of each partner to collect debts due the firm and give discharges therefor." See also 40 Am. Juris. 318, Mechem, Elements of Partnership (2d Ed.) 362. And so in connection with the enforcement of the rights of the partnership, it may maintain a suit whenever that is necessary. American Cotton Co. vs. Whitfield & Mitchell (Tex. Civ.

App.) 88 S. W. 300, Traweek vs. Pecos & N. T. Ry. Co. (Tex. Civ. App.) 288 S. W. 843, 68 C. J. S. 888. Moreover, the action of Arnold Larsen was fully ratified by the remaining members of the original partnership by their actions in this case and by bringing the suit in this case, and such ratification would have the same effect as that of an original agreement.

## 2. TENDER OF AMOUNT DUE.

Objection is made by counsel for appellants that the tender made in this case was not of lawful money. The tender was made by a check drawn on a bank at Rawlins by the new partnership. Counsel have evidently overlooked our case of H. E. Wright & Co. vs. Douglas, 26 Wyo. 305, 183 P. 786 where this court stated: "it is a well settled rule of law that if a tender is refused on grounds and for reasons other than that it does not constitute an offer of lawful money, or is not the kind of money or property in which payment is to be made by the terms of the contract, the creditor waives that objection and cannot thereafter insist that the tender was not good for that reason." The rule here stated is well settled. See Annotation, 23 A. L. R. 1288, 51 A. L. R. 395, 52 Am. Juris. 222. In Gaunt vs. Alabama Bound Oil & Gas Co., 281 Fed. 653, 23 A. L. R. 1279 the court said: "It is ordinarily required of one to whom payment is offered in the form of a check that he make his objecttion at the time, to the offer of a check, instead of an offer of payment in money. * * * Payment by check or similar bank paper has become so generally recognized as acceptable in business transactions that the omission to make objection to the form of payment is regarded as a waiver of the right to demand payment in money. This is especially true where the offerer could readily obtain the money and tender it in time, if the person receiving the check had made objection at the time."

Nor can an objection be based on the sources from which money comes where the tender is made by one entitled to make it. 52 Am. Juris. 222-223.

Counsel seem to think that the tender was not made in the proper place, citing 55 Am. Juris. 770 where it is said: "Where no place for the payment of the purchase money is specified, the vendor is entitled to have the payment made to him personally at his place of residence." In the case at bar it was made to the defendant personally at the office of the attorney for the plaintiffs. It is said in 52 Am. Juris. 228: "As a general rule, when no place of payment is fixed by the contract, a tender may be made in the state or country where the contract was made." No place for the tender to be made was specified in the contract and having been made to the defendant himself at Rawlins, Wyoming, where he frequently lives or to which he frequently comes, the objection that it was not made to him at any other place cannot be any valid objection herein.

## 3. FORFEITURE OF THE LEASE.

Appellants pleaded, and at the trial of the case contended, and they now contend that the lease and the option to purchase, was forfeited because of the fact that the fences on the land were not kept in repair in violation of the agreement in the lease, that the land was overgrazed, and that a reservoir was built on the land without the consent of the lessor, and that this constituted waste. The evidence on these matters was in conflict, but it may be assumed for the purposes of this case that these facts are true. See Annotation on the subject in 115 A. L. R. 376. As heretofore shown, no attempt to cancel the lease was made until after the exercise of the option, and then only upon the ground that the rental for the premises was in default, which was shown to be a baseless ground. Sjogren had full

knowledge of the violations of the terms of the lease of which he complains, and he thereafter accepted payments of rentals due. Forfeitures are not favored, since that is a harsh method by which to deprive a party of his rights. In some cases specific performance of a contract for an option to purchase has been enforced even though there was a technical default in the payment of rent( Feinstein vs. Siskin, 69 D. & C. 90), or even where such default had existed for a period of three months, as in Trotter vs. Lewis, 185 Md. 528, 45 Atl. 2d 329. In any event a breach of covenant or condition in a lease does not ipso facto terminate a lease, but some affirmative step must be taken—e.g. re-entry—in order to enforce the forfeiture. 51 C. J. S. 693, 696, 32 Am. Juris. 722. Such forfeiture may be waived and since it is not favored, slight circumstances will at times suffice to constitute a waiver. Thus it is stated in 32 Am. Juris. 747: "Generally speaking, any recognition by the lessor of a tenancy as subsisting after a right of entry has accrued, where the lessor has notice of the forfeiture, will have the effect of a waiver of the landlord's right to a forfeiture of the leasehold. Slight acts on the part of the lessor may be sufficient. Indeed, it has been ruled that any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture." So assertion of one ground of forfeiture (as in the case at bar, and which was not well taken) waives all others. 51 C. J. 701. Thus, too, the payment and acceptance of rent, after breach, with knowledge thereof as is true in this case, will ordinarily waive the causes for forfeiture. 32 Am. Juris. 749, 51 C. J. S. 704-705.

Furthermore, it is stated in Cheatham vs. Plinke, 1 Tenn. Ch. 576 that: "Whatever right of re-entry and forfeiture he (lessor) may have had, he must have en-

forced such right during the term. His failure to do so was clearly a waiver of the forfeiture." See also 35 C. J. 1075, Note 12. The term referred to was the term of the lease. No forfeiture was declared during the term of the instant lease, for that term had ended when the plaintiff exercised its option to purchase. Thus it is said in 32 Am. Juris. 280: "It is the exercise of the option during the term of the lease which extinguishes the lease and terminates the relation of landlord and tenant. When the option is exercised, the lease and all its incidents, express or implied, are blotted out of existence, and the relation of vendor and vendee created." To the same effect is 51 C. J. S. 640. It is accordingly stated in 32 Am. Juris. 287 that it has been held "that the lessor may not avail himself of breaches of covenant after the lessee has tendered the purchase price of the premises in accordance with the terms of the option to purchase, since no forfeiture has been declared." Thus in Sanders vs. Bryer, 152 Mass. 141, 25 N. E. 86, 9 L. R. A. 255, which presents such a situation, the court stated: "It (the trial court) could not have found on the evidence that there was any breach of covenant or condition of which the defendants could avail themselves after tender of payment, under the agreement by the plaintiff." In Gassert vs. Anderson, 201 Minn. 515, 276 N. W. 808 the court after quoting the rule that when an option to purchase in a lease is exercised, the lease ceases to exist, the court said: "Therefore it would seem logically to follow that in event there is a consummation of a contract for sale brought about by virtue of the exercise of the option, the lessor cannot abrogate such right by thereafter undertaking to forfeit the lease because of claimed past violations thereof." Then the court considered various causes of forfeiture including the one that the premises had not been kept in proper condition. The trial court had found the causes of forfeiture not to exist. The Supreme Court stated further:

"But even were we to grant all defendant claims in this regard it does not help him. Unless and until he manifested his intent to forfeit the lease 'by some clear and unequivocal act' before the tenant put the option into operation, the contractual obligation created by the lease remained in full force. 35 C. J. p. 1075." In Keogh vs. Peck, 316 Ill. 318, 147 N. E. 266, 38 A. L. R. 1151, waste, namely the demolition of a building on the premises was claimed to be a cause of forfeiture of the lease and a ground for denying specific performance in connection with the option to purchase. The case is accordingly directly in point herein. The court said: "Where, however, in a lease, a tenant is given an option to purchase the premises at any time before the expiration of the lease, while the tenant, until the privilege of purchase is exercised, remains a mere tenant, subject to the same obligations as other tenants and answerable for any waste committed by him, still his liability to a suit for waste is suspended until it is known whether or not he will avail himself of his privilege. The fact that the estate will ever revert to the landlord is not fixed and certain, and while the legal right to exercise the option remains, there can during such term be no act of waste committed which the tenant cannot avoid by the exercise of his right to purchase. Powell v. Dayton, S. & G. R. R. Co., 16 Ore. 33, 8 Am. St. Rep. 251, 16 P. 863, 16 R. C. L. 805. In the present case, appellee having exercised his election to purchase the premises, the demolition of the building in question is immaterial to appellants and is no defense to appellee's suit for specific performance. Had Peck declared a forfeiture of the lease on the ground that appellee had failed to keep the covenants of the lease prior to appellee's election to purchase, an entirely different question would have arisen; but at the time appellee gave notice of his election to purchase no forfeiture had been declared and the lease and the contract of purchase were both in full force and

effect. Bell vs. Wright, 31 Kan. 236, 1 P. 595; Sanders v. Bryer, 152 Mass. 141, 9 L. R. A. 255, 25 N. E. 86."

Counsel for appellants contend that where the cause of forfeiture is continuous in nature, the waiver of one breach is not a waiver of another breach. That may be conceded. See Liberty National Bank vs. Pollack, 337 Ill. App. 385, 85 N. E. 2d 855. It could, in this case, apply to the covenant to repair the fence and the consequent overgrazing of the premises. But that rule has no application herein. It does not destroy the effect of the rule that forfeiture must be declared, if at all, prior to the exercise of the option to purchase. Moreover, after that option had been exercised, appellants had no interest in the condition of the fence or the overgrazing of the premises. That condition was then, of course, wholly immaterial so far as they were concerned. Bell vs. Wright, 31 Kan. 236, 1 P. 595, Keogh vs. Peck, supra.

We are not certain, but it would seem that counsel for appellants do not claim that the lease was forfeited on the ground of the assignment of the lease, since that position would seem to be in contradiction of the claim hereafter discussed that Arnold Larsen is the real party in interest herein. If, however, such claim is made, we do not think it to be well taken in view of the knowledge of Sjogren, his acceptance of rentals and the rules and principles heretofore mentioned. Gaskins vs. Ristich, 339 Ill. App. 493, 90 N. E. 2d 232, Martin vs. Auerbach, 94 Cal. App. 2d 222, 210 P. 2d 321, Nardis Sportswear vs. Simmons, 147 Tex. 608, 218 S. W. 2d 451, 219 S. W. 2d 779, Ditmas Apartments vs. Coster, 196 Misc. 728, 94 N. Y. S. 634, Saxeney vs. Panis, 239 Mass. 207, 131 N. E. 331, Safeway Stores vs. Buhlinger, 85 Cal. App. 717, 259 P. 1013.

We do not, of course, mean to intimate that when no forfeiture has been declared during the term of the

lease, any party whatever has the right to exercise the option to purchase contained in the lease, but we assume that that may be done only by the original lessee or by the assignee (Orange Motors vs. Meyer, 107 N. J. Eq. 461, 149 Atl. 811) whose rights, in view of the prohibition against the assignment, have been recognized by the lessor.

### 4. PLAINTIFFS AS THE REAL PARTIES IN INTEREST.

Counsel for the appellants claim—perhaps the main contention herein—that Arnold Larsen, and not the plaintiffs, is the real party in interest herein and that accordingly the action was brought in violation of Section 3-601, Wyo. Comp. St. 1945, which provides that an action must be prosecuted in the name of the real party in interest. This contention would seem to imply— whether counsel mean that or not we cannot say—that the assignment to Arnold Larsen was recognized by Sjogren as valid and that Arnold Larsen should and could have brought the action. Assuming with counsel that an assignment was actually made to Arnold Larsen, still it is only an equitable one, as counsel admit, and the legal title to the right to exercise the option remained and still remains in the old partnership or the old partners. It is said in 47 C. J. 35-36: "While beneficial ownership without legal title may constitute one a 'real party in interest' within the meaning of the code, legal title in plaintiff is generally held to be sufficient in itself to support the action." Numerous cases are cited and see the late case of Rae vs. Cameron, 112 Mont. 159, 114 P. 2d 1060. That it is neither improper nor unjust to apply that rule in the case at bar will be readily seen when we examine the statutory rule that an action must be prosecuted in the name of the real parties in interest in the light of reason and the purpose for

which that statute was enacted. In Sturgis vs. Baker, 43 Ore. 236, 241, 72 P. 744 the court stated: "The statute requiring that every action shall be prosecuted in the name of the real party in interest * * * was enacted for the benefit of a party defendant, to protect him from being again harassed for the same cause. But if not cut off from any just offset or counterclaim against the demand, and a judgment in behalf of the party suing will fully protect him when discharged, then is his concern at an end." In Rullman vs. Rullman, 81 Kan. 521, 106 P. 52 the court stated: "The relation between these parties (plaintiff and others) is of little concern to the defendant debtor if he has the opportunity to make all of his defenses, and will be protected by a payment to the one bringing the action." In Meyers vs. Bank of Am. Natl. Trust & Savings Assn., 11 Cal. 2d 92, 69 P. 2d 868, the court states: "The law is settled that a defendant has a right to have a cause of action against him prosecuted by the real party in interest (section 367, Code Civ. Proc.), but this right ends when (1) a judgment for or against the nominal plaintiff will protect him from any action upon the same demand by another, and (2) when as against the nominal plaintiff he may assert all defenses and counterclaims available to him, were the claim prosecuted by the real owner (Giselman v. Starr, 106 Cal. 651, 657, 40 P. 8; Mosier v. Suburban Estates, Inc., Ltd., 137 Cal. App. 574, 575, 31 P. (2d) 209, 20 Cal. Jur. 490). In the present case plaintiff was present in court, testified that he had been indemnified in full and had assigned his claim to the United States Guarantee Company, who was also represented in court by its attorneys. Hence defendants were fully protected from any future claim against them by either plaintiff or his assignee and could have urged in the present case any and all defenses which they might have presented, had the suit been brought in the name of the plaintiff's assignee, United States Guarantee

Company." See further on this subject 39 Am. Juris. 871, and 47 C. J. 33-34 and numerous cases cited. The situation in the case at bar is not dissimilar to the situation in the California case last cited. Appellants were able to set up all the defenses which they had in the suit that was brought herein. All the parties who could have any possible interest against them in the matter in controversy were in court. They not alone brought the suit—in the name of the plaintiffs, mentioning the partners by name—to support the right of the actual plaintiffs herein, but each of the partners testified in the case, so that if either Arnold Larsen individually, or the new partnership separately, were to claim any right against the appellants by reason of the lease or option herein, they would be fully estopped to do so. Hence appellants were fully protected.

However, that may be, the court specifically found: "That the lease was never assigned by the firm to Arnold Larsen and that plaintiffs have at all times remained in possession of and used the leased premises and neither defendant has re-entered or attempted to do so." If that finding is correct, it disposes of the contention that plaintiffs are not the real parties in interest, as well as of the claim, if made, that the lease was forfeited by reason of assignment of the lease. We do not think that we are warranted in holding contrary to the finding of the trial court. As already indicated, the dissolution agreement provided for the assignment of the Sjogren lease to Arnold Larsen. But the assignment was never completed; the agreement in that connection was orally modified and the Sjogren lease was retained in the old partnership. The fact that the new partnership paid the option money and the fact that it paid the rentals is, we think, confirmative thereof. These facts negative any conclusion that the assignment to Arnold Larsen was actually completed. Counsel for ap-

pellants on oral argument in this court contended that the written contract governs; that it could not be modified by parol since the parol evidence rule is a rule of substantive law. However, numerous cases have decided that the parol evidence rule cannot be invoked by a stranger to the contract and has no application in a situation such as presented here. 32 C. J. S. 791, Sec. 861, 20 Am. Juris. 984 to 986. Wigmore on Evidence, (3rd Ed.) Sec. 2436. Furthermore, on the trial, evidence as to the oral modification of the contract was admitted without objection and a good deal of it was brought out by cross-examination on the part of counsel for appellants. Hence, the rule, if applicable at all, was waived. 32 C. J. S. 796, Sec. 863. The cases cited by counsel in connection with the foregoing contention involved disputes between partners inter se and are not in point herein. As stated in Williams vs. Eggleston, 170 U. S. 304, 42 Law. Ed. 1047, 18 Sup. Ct. 617: "The parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no right to insist that it has been broken." See also 12 Am. Juris. 1004-1006.

We find no reversible error in the record and the judgment of the trial court must accordingly be and is hereby affirmed.

*Affirmed.*

RINER, C. J., and KIMBALL, J., concur.