MARTIN KRUG et ux.; ARTHUR C. NELSON, Intervener, Appellants,
v. DEERING IMPLEMENT COMPANY, Appellee.

No. 47149.

(Reported in 30 N. W. 2d 729)

FEBRUARY 10, 1948.

F. Hollingsworth, of Boone, and Leonard S. Nelson, of
Ogden, for appellants.

158

Dyer, Jordan & Dyer, of Boone, for appellee.

BLISS, J.—In the summer of 1944 plaintiffs bought the property involved herein. It consists of two adjacent lots in the city of Boone, Iowa. On one lot is a two-story brick building 112 by 56 feet. The other lot, 60 by 180 feet is vacant but is used with the improved lot. The "Deering Implement Company" is but a trade name of James J. Deering, who has occupied this property under lease, in the operation of his farm implement business, since 1933. In the beginning he had a five-year lease. After its expiration he had no written lease, but leased and occupied the property on a month-to-month arrangement. Plaintiffs bought the property in the summer of 1944. Each acquired and owned an undivided one-half interest therein. Their grantor executed a warranty deed to them as grantees on August 18, 1944. This deed was recorded in the Boone county recorder's office on September 7, 1944. Defendant was informed by his old landlord that plaintiff Martin Krug had bought the property. He had no actual or hearsay knowledge of Lydia Krug's interest in the property until shortly before this suit was begun. He continued to occupy the property on an oral, month-to-month lease arrangement with Martin Krug for several months. He paid his monthly rent of $85 to Martin Krug. Deering's health was such that he did not wish to bind himself by a lease for a longer period than a year, but he wished to continue with his business as long as his health permitted. Sometime in the fore part of 1945 he discussed the matter of a written lease with Martin Krug, who also did not wish to lease the property for a longer term than one year at a time. On June 4, 1945, he had his attorney prepare a lease in duplicate between himself, as lessor, and defendant, as lessee, for a term of one year. Defendant was not satisfied. He told Krug that he would like to be assured of having the property for longer than a year. Krug told him that he would always give him the first chance of renting for another year. The next day the discussion was resumed. Mrs. Deering was present. Either she or Mr. Deering typed into the duplicate leases which Mr. Krug had brought, the following provision:

"This lease may, at the option of the Deering Implement Co., be renewed from year to year at a rental of Eighty-five ($85) Dollars per month."

When Martin Krug was asked whether he read the clause or whether it was shown to him or read over to him, he answered:

"No, I glanced at it. I says 'That gives you the first chance. That is what I want. I want you to have the first chance.' If I had read that over it would not have been satisfactory to me."

The execution of the lease was acknowledged at that time before a notary public, and each party took an executed duplicate lease. The term of the lease was from June 1, 1945 to June 1, 1946, with the above-noted option of renewal.

On March 2, 1946, the plaintiffs sold the property by written contract to the intervener subject to defendant's right of possession to June 1, 1946. On April 27, 1946, defendant served notice on Martin Krug and the intervener of the exercise of his option to renew the lease for the year commencing June 1, 1946. No such notice was served on Mrs. Krug. In the notice was the following provision:

"This notice is given without prejudice to the rights of the Deering Implement Company to renew such lease from year to year, commencing June 1, 1947, as provided therein."

On April 30, 1946, plaintiffs served upon the defendant company and Deering a written notice stating that the tenancy under the lease terminated on June 1, 1946, and that he should quit the premises on or before that date.

On March 29, 1946, plaintiffs served written notice on the defendant to execute a quitclaim deed or disclaimer to the property, and tendered $1.25 to cover expense of executing and delivering the deed. The notice stated that upon failure to comply with the notice within twenty days from date of service, an action to quiet title would be brought. Defendant did not comply with the notices of plaintiffs.

On June 5, 1946, plaintiffs filed their petition herein, alleging: their absolute ownership of the property; their information

and belief that defendant makes some adverse claim to the property; the service of notice by defendant of his intention to exercise his option to renew the lease annually as provided therein; the service of plaintiffs' notice to quit, and their demand for quitclaim deed; and also: "That plaintiffs expressly aver that the defendant does not have in fact any right, title or interest in or to the said * * * real estate, or any part thereof, or any color of right, title or interest therein, and that defendant's claim is a cloud on the title of the plaintiffs herein."

The prayer was for the establishing and quieting of plaintiffs' title and the barring of any right, title or interest of defendant in the property adverse to plaintiffs; and for the eviction of defendant from and after June 1, 1946, and for double damages for defendant's unlawful use and occupancy of the premises; and for further equitable relief as may appear to the court just and proper.

The allegations and prayer of intervener's petition were in substance like those of the plaintiffs' petition.

For answer to each petition defendant alleged the execution of the lease with the renewal provision, his exercise of the renewal option, and his possession thereunder. He prayed for the dismissal of the petitions.

The reply of plaintiffs and intervener admitted that Martin Krug, without the knowledge or consent of Lydia Krug, executed the original lease, but alleged that the renewal provision was fraudulently inserted in the lease without the knowledge or consent of Martin Krug, and its presence therein was not discovered until after the execution of the contract with intervener. The reply also alleged in paragraph 4, that the lease, as executed:

"* * * does not express the understanding of the parties thereto in that it lacks mutual consent and is tainted by fraud and that it should be reformed by this court to express the agreement of the parties.

"5. That the plaintiff, Lydia Krug, is an owner of a one-half interest in the said premises as a tenant in common with Martin Krug. That she has not adopted the lease as executed

by Martin Krug with the defendant and that she did not read said lease until after the execution of the contract of sale * * * to the intervener; she having had no knowledge of the option provision therein until such time."

The prayer was for relief "as heretofore stated."

At the close of the evidence the answers of defendant were amended to allege that "Lydia Krug, by her acts and conduct has recognized that the plaintiff, Martin Krug, has been her agent in all of the transactions connected with the matters involved in this cause, with full authority, and she is therefore barred and estopped from making any claim contrary thereto."

In the "Finding, Ruling and Order for Dismissal" the court stated in substance: that plaintiffs were not entitled to reformation of the lease because such relief was neither asked nor prayed for in the petition; the briefs deal almost entirely with the authority of Martin Krug to lease the premises without the knowledge, consent, or authority of his wife; as to this question there is a sharp conflict in the evidence. The court further stated:

"So far as the charges of fraud and mutual mistake are concerned, the record is such, both as to the evidence offered and the state of the pleading, as to make it difficult to reach a satisfactory conclusion on the questions thus raised. I do not think these issues were fairly or fully presented and the case was tried, and at least argued, on another theory.

"Under these circumstances the plaintiffs now ask the court to declare either the lease or the optional clause in the lease to be null and void and the defendant held to have no right or interest in the premises whatever. I do not think this would be either 'just, equitable or proper'.

"There is nothing in the law of Iowa, either statutory or by judicial pronouncement that forbids the making of a perpetual lease on real estate. As a matter of fact, however, I am of the opinion the optional clause does not constitute a perpetual lease. It could not be fairly construed to pass the rights under the lease to the heirs, representatives or assigns of the defendant Deering. The lease itself forbids the subletting of the premises or any part thereof.

"It is very apparent that the optional clause in the lease has turned out to be a hardship on the plaintiffs. If they can establish any fraud, mutual mistake or other circumstances in a proper proceeding that would entitle them to equitable relief I do not think their right to do so should be foreclosed by the ruling in this case.

"This ruling, therefore, is not to be deemed as an adjudication of these items, namely: Fraud, mutual mistake or lack of authority of Martin Krug to bind his cotenant on the lease. * * *

"The plaintiffs' petition is denied and the same is dismissed at the plaintiffs' cost."

Plaintiffs rely upon eleven propositions for reversal. It is unnecessary to pass upon all of them.

I. One proposition is that the court erred in failing to find and decree that Martin Krug was not the agent of Lydia Krug in executing the written lease, and its execution was not with her authority, knowledge or consent, and was voidable with respect to her.

It is our conclusion that the record fully sustains the proposition. The lease does not purport to bind Lydia Krug nor to have been executed by her or on her behalf. It recites on its face that it is a lease between Martin Krug and the defendant, and they alone executed it. There is not the slightest evidence that she had any knowledge of such lease or its execution. The attorney who prepared the original draft of the lease had no such knowledge or information. The defendant had no knowledge that she had any interest in the property. He did not intend to enter into a lease with her, and he did not. There is no evidence of any acts or conduct on her part that she intended to execute such a lease. Neither is there evidence of any acts or conduct on her part that reasonably could have misled the defendant into believing that she had authorized the lease, or was cognizant of it. There is no merit in defendant's belated pleading that Lydia Krug had estopped herself to contest defendant's claim, or to deny Martin Krug's authority to execute the lease containing the option clause. How could defendant have relied upon any acts or conduct on her part when he had

no actual knowledge of her interest in the property? He did nothing to his prejudice in reliance upon what she did or upon what she failed to do. If the defendant has in any way been injured, he has only himself to blame. The deed showing Lydia Krug's undivided one-half interest in the property was recorded on September 7, 1944. He had constructive notice of her right, title and interest in the property, and he took the lease subject thereto. She denied authorizing Martin Krug to execute the written lease with or without such a renewal provision as it contained, or any written lease. Her evidence is not contradicted by evidence or reasonable inference.

Defendant had leased this property from month to month, according to his own testimony, for years. He continued to so occupy it after the plaintiffs purchased it. Lydia Krug knew this. There is no evidence she knew this arrangement had been changed until she was informed of the written lease when the sale was made to the intervener. She then promptly disaffirmed the written lease by the notice to quit the premises on June 1, 1946, and the demand for a quitclaim deed. These instruments on their face and by her execution imply her assent to the occupancy of the premises to June 1, 1946.

The defendant failed to sustain his burden of proof that Martin Krug was the authorized agent of Lydia Krug in the execution of the written lease, or that she had estopped herself to deny such authorization. The evidence shows that Lydia Krug had a financial interest in the property. She had contributed to its purchase. She permitted Martin Krug to give his attention to the property. With her consent and knowledge he collected the monthly rental paid by defendant. He attended to the payment of taxes, the insurance premiums and any expense for upkeep of the building. It is a reasonable inference that she had consented to having the month-to-month leasing continue as it had existed when they purchased the property, and that Martin Krug might act for her in the matter. It was merely the continuance of a condition of which she had knowledge, and which was agreeable to her. But it is not reasonable to hold that she thereby authorized him to bind her to an entirely different lease under which defendant might con-

tinue in the occupancy indefinitely at his option, and at a fixed monthly rental of $85.

In 2 Am. Jur., Agency, section 151, it is stated:

"Authority to manage land empowers the agent to lease in the ordinary form for ordinary terms, but not to make an unusual lease * * *. However, authority to lease lands * * * is not to be implied or inferred merely from an authority to sell the subject-matter, to take charge of it, or to receive rents from it." Citing authorities.

It is our conclusion that defendant's right to occupy the property under any leasing arrangement with plaintiffs terminated on June 1, 1946.

II. Our holding in Division I is decisive of the possessory rights of the defendant in the property. The parties have discussed the legal effect of the renewal clause and its proper construction. As a witness, defendant insisted that he had a right to remain on the property as long as he exercised his option. Plaintiffs contend on the appeal that if the written lease had been made effective by Lydia Krug's signature, the renewal clause would have given the lessee the right to one renewal, that is, an extension from June 1, 1946 to June 1, 1947. Since she did not execute the written lease or bind herself to its terms by her conduct, plaintiffs insist the written lease is of no force. Defendant argues that by the exercise of the option to renew prior to June 1, 1946, he became entitled to the occupancy of the property to at least June 1, 1947.

Since it is our conclusion, as held in Division I, that the written lease was without force, it is not necessary to determine the legal effect of the renewal provision. But, without deciding the question, the weight of authority and precedent appears to be that under such a provision the lessee is entitled to but one renewal or extension of the lease. See 51 C. J. S., Landlord and Tenant, section 61; 32 Am. Jur., Landlord and Tenant, section 968; 35 C. J., Landlord and Tenant, sections 143, 164; 16 R. C. L., Landlord and Tenant, section 391; also decisions supporting each of the texts; 1 Taylor's Landlord and Tenant, Ninth Ed., 392, section 322. See, also, the following decisions where provisions substantially like the renewal clause in the

lease before us have been held to entitle the lessee to but one renewal: Lawson v. West Virginia Newspaper Pub. Co., 126 W. Va. 470, 29 S. E. 2d 3–5, and authorities cited; Hallock v. Kintzler, 142 Ohio St. 287, 51 N. E. 2d 905, and cited cases; Marsylak v. Fox, 260 Mass. 127, 156 N. E. 856; Tischner v. Rutledge, 35 Wash. 285, 77 P. 388–390; Gray v. Stadler, 228 Wis. 596, 280 N. W. 675, 677, 281 N. W. 280; Drake v. Board of Education, 208 Mo. 540, 106 S. W. 650, 14 L. R. A., N. S., 829, 123 Am. St. Rep. 448, 13 Ann. Cas. 1002; Buckland v. Tarble, 95 Vt. 87, 112 A. 217; annotation 39 A. L. R. 279.

The order of the trial court is therefore reversed and the cause is remanded to the district court for entry of a decree not contrary hereto, but with such other entries as further proceedings may require respecting damages or other issues.—Reversed and remanded.

MULRONEY, C. J., and OLIVER, HALE, GARFIELD, MANTZ, SMITH, and HAYS, JJ., concur.