Argued February 16, affirmed March 2, argued on rehearing
April 27, former opinion withdrawn, reversed and
remanded September 9, 1955

# McCREIGHT ET UX *v.* GIRARDO

280 P. 2d 408
287 P. 2d 414

*Edwin J. Welsh,* Portland, argued the cause for appellants. With him on the brief were Jack M. McLaughlin and McCarty, Dickson & Swindells, Portland.

*Richard F. Deich,* Portland, argued the cause for respondent. On the brief were Bryson and Deich, Portland.

Before WARNER, Chief Justice, and LUSK, BRAND and LATOURETTE, Justices.

LATOURETTE, J.

Declaratory judgment proceeding to construe a lease.

On March 10, 1950, Clarence Gibbs leased the premises upon which there is a gasoline filling station

to defendant John Girardo. On January 10, 1951, Gibbs sold the property to plaintiffs. The lease was for a period of one year at a rental of $250 a month, payable monthly in advance on the 10th day of each calendar month. The controversy revolves around the following clauses of the lease:

> "Lessee shall have the option of renewal of this lease, on the same rental basis and on the same terms, from year to year, for a like period of one year.
>
> " * * * * *
>
> "The Lessee shall have an option to purchase the above described premises during the term of this lease or renewal thereof, for the purchase price of Twenty Six Thousand Dollars ($26,000.00), upon terms which will be mutually agreed upon by the parties hereto at the time of said purchase. It being understood that Lessee will be given credit on said purchase price of the amount of $100.00 per month for each month of rental paid to Lessor during the life of this lease or any renewal thereof.
>
> "Lessee agrees to purchase from Lessor all machinery, equipment and inventory of merchandise now on hand and situated upon the premises, at a price to be mutually agreed upon (approximately $2500.00) and will make a cash down payment on said purchase price in the amount of $500.00 at the time of execution of this agreement.
>
> "The contract balance due and owing to Wiggins & Co. for equipment, in the amount of approximately $650.00, shall be paid by Lessee at the rate of $50.00 per month plus accrued interest on the unpaid balance at 6 per cent per annum, until paid."

Plaintiffs contend that under the provisions of the lease defendant is entitled to only one renewal of said lease for a period of one year and that the purchase

clause is too indefinite to be enforceable, whereas defendant claims that the lease may be renewed for successive terms of one year each and that the purchase clause is definite and certain. The trial court took the defendant's view. Plaintiffs appeal.

■ It is a well-recognized rule that perpetual leases are not favored and that a perpetual renewal clause will not be upheld unless the renewal provision be clear and unambiguous. 51 CJS 606, Landlord and Tenant, § 61; 32 Am Jur 813, Landlord and Tenant, § 968.

■■ Plaintiffs contend that if defendant's theory is adopted, the clause "from year to year" would create a perpetual renewal in conflict with the above-established rule. If these words stood alone in the lease plaintiffs' position might be tenable. However, we must look to the entire lease to determine the intent of the parties. *The Texas Co. v. Butler,* 198 Or 368, 376, 256 P2d 259. That the lease is not in perpetuity is evidenced by the purchase clause of the lease which gives the defendant the option to buy the premises for $26,000, defendant to be given credit of $100 a month from the rental on the purchase price. This forecloses the idea that the lease is in perpetuity because at the end of 21 years and 8 months the property would be paid for and the lease terminated.

■ The fact that the clause "for a like period of one year" follows the clause "from year to year" has in our opinion marked significance. If the clause "from year to year" were excluded, the sentence would read:

"Lessee shall have the option of renewal of this lease, on the same rental basis and on the same terms, * * * for a like period of one year." Obviously, under such rearrangement there would be only one year's renewal. Therefore the language

"from year to year" in our opinion means more than one year's extension and would indicate an intention on the part of the parties to grant defendant an option to rent the premises for successive years not exceeding 21 years and 8 months.

Bearing on the intention of the parties is a clause in the lease providing for the purchase of the machinery, equipment and inventory of merchandise situate on the premises for the sum of approximately $2,500. The reason the figure was made approximate was that obviously at the time of the execution of the lease it was not known how much was owing from Gibbs to Wiggins & Co. It is not reasonable to assume that defendant would buy the equipment, machinery and inventory for the $2,500 and at the end of the second year find himself "out on the street."

No case in Oregon on this point has been cited by counsel although each side has supplied cases from other jurisdictions. In each case cited the factual situation was different from that in the instant case. For that reason they are not helpful in determining the question before us.

The trial court held that the option to purchase, as written in the lease, was definite and certain. Plaintiffs contend that this ruling was error. Unquestionably, the clause "upon terms which will be mutually agreed upon by the parties hereto at the time of the purchase" is indefinite and unenforceable. See *Alexander v. Alexander,* 154 Or 317, 58 P2d 1265; *Slayter v. Pasley,* 199 Or 616, 264 P2d 444. However, the remainder of the option to purchase clause is definite. If the parties are unable to mutually agree upon the terms there is nothing to prevent the defendant from paying the $26,000 in cash or let the lease run for 21 years and 8 months, at the expiration of which, if they keep up the

payments on the lease, they will be entitled to a deed to the property. It therefore appears that the "upon terms" clause is of no importance, is harmless and in no wise detracts from the other provisions of the option to purchase.

Affirmed.

## ON REHEARING

## ON REHEARING

*Edwin J. Welsh,* Portland, argued the cause and filed a brief for appellants.

*Richard F. Deich,* Portland, argued the cause for respondent. On the brief were Bryson and Deich, Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, LATOURETTE and PERRY, Justices.

PERRY, J.

We granted a rehearing in this case, and, after more mature consideration of the question involved, have reached the conclusion that our former opinion was in error.

The plaintiffs commenced this suit against the defendant in Multnomah county for the purpose of having their rights determined and declared under a lease entered into between Clarence Gibbs (their predecessor in title to the real premises and personal property involved in this controversy) and the defendant.

The lease, which was entered into in March, 1950, contained an option to purchase, and, insofar as is material hereto, reads as follows:

"'* * * * *

"Lessor hereby leases unto the Lessee the following described premises, towit:

"Service Station located at No. 4700 S. E. Woodstock Ave. Portland, Oregon, being more particularly described as the West 81 feet of Lot 4, in Block 12, Woodstock Addn., City of Portland, Oregon.

"'This lease shall be for a term of one year, commencing March 10, 1950, and ending March 10, 1951, unless sooner terminated as hereinafter provided, at a rental of $250.00 per month to be paid monthly in advance, upon the 10th day of each calendar month.

"The parties hereto hereby agree as follows:

"Lessee shall have credit on the monthly rental payment of all amounts received as rebate (for gas sales) from Richfield Oil Company, payable monthly.

"Lessee shall have the option of renewal of this lease, on the same rental basis and on the same terms, from year to year, for a like period of one year.

"This lease may be terminated at anytime by the Lessee by notice in writing to the Lessor to that effect at least 10 days in advance of the date upon which the lease is to be terminated.

"Lessee shall have an option to purchase the above described premises during the term of this lease or renewal thereof, for the purchase price of Twenty Six Thousand Dollars ($26,000.00), upon terms which will be mutually agreed upon by the parties hereto at the time of said purchase. It being understood that Lessee will be given credit on said purchase price of the amount of $100.00 per month for each month of rental paid to Lessor during the life of this lease or any renewal thereof.

"Lessee agrees to purchase from Lessor all machinery, equipment and inventory of merchandise now on hand and situated upon the the [sic] premises, at a price to be mutually agreed upon (approximately $2500.00) and will make a cash down payment on said purchase price in the amount of $500.00 at the time of execution of this agreement.

"The contract balance due and owing to Wiggins & Co. for equipment, in the amount of approximately $650.00, shall be paid by Lessee at the rate of $50.00 per month plus accrued interest on the unpaid balance at 6% per annum, until paid.

"Lessee shall pay all sums for utilities (Light, water, Telephone) used within said premises by lessee during his occupancy of the premises.

"All minor facilities on the premises shall be maintained in good state of repair by the Lessee.

"All major facilities shall be maintained in good condition by Lessor.

"Lessee shall have the right, during the existence of this lease, to make alterations, attatch [sic] fixtures, erect equipment, structures or signs, in or upon the premises, which said fixtures or equipment so placed upon the premises shall remain the property of Lessee and may be removed by Lessee upon the termination of this lease.

"In event the Lessee shall fail, neglect or refuse, for a period of 15 days after notice, to make good any default hereunder, then the Lessor may either (1) bring such action or suit as he may elect for enforcement of his rights hereunder, or (2) the Lessor may terminate this lease by giving 30 days notice of his intention so to do, whereupon Lessee shall deliver up possession of said premises at the expiration of said 30 day period, and shall pay all unpaid rentals accrued and owing to the date of surrender of possession.

"* * * * *"

The lease was for the term of one year commencing March 10, 1950, and ending March 10, 1951. The consideration for entering into the lease for that term is stated as the payment of a monthly rental of $250, the purchase of all of the "machinery, equipment and inventory of merchandise now on hand and situated upon the premises", and the assumption of a contract of purchase of equipment from Wiggins & Co. Upon exercise of the option to renew, the rental, it is provided, shall be the same as for the original term, that is, $250 per month.

This suit was commenced on the 28th day of March, 1952, which was subsequent to the termination of the second year of the tenancy. Therefore, the rights of the parties are to be determined by a proper construction of the provision of the lease giving the lessee an

option to renew. This provision is for convenience again set forth:

> "Lessee shall have the option of renewal of this lease on the same rental basis and on the same terms, from year to year, for a like period of one year."

It is the contention of the plaintiffs that this clause grants the right to only one renewal, and that any ambiguity that there may be in the language must be construed against an agreement for successive renewals tending to create a perpetual lease, under the principles hereinafter stated.

██ The defendant says that the phraseology used is sufficient to establish a perpetual right of renewal, which, however, may be limited in duration by the terms of the option to purchase to a period of 21 years and 8 months. Following this reasoning of the defendant, we said in our former opinion "that the lease is not in perpetuity is evidenced by the purchase clause of the lease which gives the defendant the option to buy the premises for $26,000, defendant to be given credit of $100 a month from the rental on the purchase price. This forecloses the idea that the lease is in perpetuity because at the end of 21 years and 8 months the property would be paid for and the lease terminated." In this we were in error for the instrument before us is a lease creating the relationship of landlord and tenant; it is not a contract of sale and purchase. Nowhere in this instrument is there any provision which binds the defendant to purchase the real estate, either at the end of 21 years and 8 months, or at any other time. True, the instrument contains an option to purchase, but under no circumstances can this instrument be considered a contract of sale whereby the plaintiff agrees to sell the property for

the sum of $26,000 on a monthly payment basis of $100 per month, for it is the established law of this state and elsewhere that a contract of sale must be bilateral in its obligations. "If it [contract] binds one party to sell and the other to purchase the property for a stipulated price, then it is a contract of sale and purchase, the minds of the parties having met upon the proposition and both having assented thereto. *Spencer v. Bales,* 108 Or 339, 345, 216 P 746; *Suburban Improvement Co. v. Scott Lumber Co.,* 59 F2d 711, 87 ALR 555, 562; James on Option Contract, p 10, § 105. On the other hand, if it gives the second party the mere privilege of buying the property if he chooses, but lays him under no obligation to do so, it is an option. *Strong v. Moore,* 105 Or 12, 20, 207 P 179, 23 ALR 1217; *Stelson v. Haigler,* 63 Colo 200, 165 P 265, 3 ALR 550, 556; Annotations: 3 ALR 576, 87 ALR 564." *Aspinwall, Executrix, v. Ryan, et al.,* 190 Or 530, 535, 226 P2d 814.

■ It is the exercise of an option to purchase by the optionee that creates the contract of sale, *Bala v. Ireland,* 183 Or 663, 196 P2d 445; *Strong v. Moore,* supra. Here the option has never been exercised.

The effect of our original opinion was to require the lessor to sell the property to the lessee on payments of $100 per month. That a sale on these terms was not contemplated by the parties is shown by the express words used in the option: "upon terms which will be mutually agreed upon by the parties hereto at the time of said purchase".

■ This lease contains a right which, if seasonably exercised by the defendant, could have changed the relationship from landlord and tenant to that of vendor and purchaser. The consideration stated in the lease furnishes the consideration for the option to purchase,

*Taylor et ux. v. Wells et ux.,* 188 Or 648, 217 P2d 236, and for this reason, and for the further reason that the option must be exercised during the life of the lease, the option is dependent for validity of consideration and length of life upon the lease, but the duration of the lease is in no way dependent upon the option to purchase. The lease, being bilateral in its obligations, is binding without any reference to the option whatsoever. Therefore, while generally speaking the subject matter is the real estate involved, the true subject matter of each agreement is entirely different, the one establishing the relationship of landlord and tenant, and the other establishing a right that, when exercised, will create the relationship of vendor and purchaser.

In our former opinion we fully approved the rule "that perpetual leases are not favored and that a perpetual renewal clause will not be upheld unless the renewal provision be clear and unambiguous. 51 CJS 606, Landlord and Tenant, § 61; 32 Am Jur 813, Landlord and Tenant, § 968".

██ This is not a rule that parties may not enter into an enforceable agreement for successive renewals of a lease. They may do so. 51 CJS 606, Landlord and Tenant § 61. It is a rule of construction. It is thus phrased in 39 ALR 280:

> "Covenants for continued renewals are not favored, because they tend to create a perpetuity; hence, the courts will not construe a lease as conferring a right to perpetual renewals, unless it clearly so provides in unequivocal language so plain as to leave no doubt of the purpose."

The renewal clause of the lease in question cannot be said to mean one thing at the time of the execution of the lease and something different 21 years and 8

months later. It is either an agreement for successive renewals or it is not. Under the defendant's contention, the renewal clause is at this moment good for 21 years and 8 months from the time of the execution of the lease, and no longer; but if the option to purchase should never be exercised it would then become an agreement for perpetual renewal, and for that reason the lease would be terminated.

█ While it is a universal rule of construction that the intention of the parties is to be garnered from the four corners of an instrument, it is also the rule that the intention of the parties is to be gathered from the language used. The clause granting an option to purchase does not in anywise refer to the number of renewals of the lease that may be made at the option of the lessee. It does not deal with that subject at all, and, therefore, throws no light on it. Instead of looking to the option to purchase provision to determine the meaning of the renewal clause, we look to the renewal clause to determine when the option to purchase may be exercised. This, the parties agreed, may be done "during the term of this lease or any renewal thereof". There is not in this language, nor in the subsequent clause, "that lessee will be given credit on said purchase price in the amount of $100 per month for each month of rental paid to lessor during the life of this lease or any renewal thereof", any indication of an intent to add to or subtract from, or otherwise modify, the meaning of the renewal clause. It is in no sense an interpretation of that clause any more than it is an interpretation of the language "This lease shall be for a term of one year". The option to purchase clause states the agreement of the parties as to the terms upon which the lessee may purchase the leased property *during the term of the lease or its renewal.* It

does not say what that term is nor what the right of renewal is. For these matters we must look elsewhere in the lease, and the entire argument, based on what the situation might be at the end of 21 years and 8 months, merely assumes as established the question at issue, which is whether or not the covenant for renewal grants the right to successive renewals.

The defendant contends that the phrase in the option to purchase, "or any renewal thereof", indicates that the parties contemplated more than one renewal. *Rubin v. Gochrach,* 186 Va 786, 44 SE2d 1. The question in that case was whether or not an option to purchase in a lease was restricted to a single renewal. The language of the option to purchase was not resorted to for the purpose of enlarging the language of the renewal clause. In those circumstances it was, of course, entirely proper to construe the word "any" as meaning "all" or "every". The Virginia case deals with an entirely different question from that with which we are now concerned. The construction of a renewal clause was not involved, but the question was whether the extension or renewal of a lease operates to extend the time for exercising an option to purchase contained in the original lease. See annotation, 39 ALR 1245.

On the other hand, in *Diffenderfer v. Board of Public Schools,* 120 Mo 447, 25 SW 542, it was held that no right of perpetual renewal is conferred by a lease whereby it is agreed that "at the end of the term hereby demised this lease shall be renewable * * * at the option of the party of the second part * * * and *every* renewal lease shall contain all the covenants, agreements, clauses, and stipulations herein contained" (italics added). Many decisions on the subject are collected in the annotation, 39 ALR 279, et seq. Beginning at page 283 cases are cited in which the right

to perpetual renewal has been denied. From an examination of these decisions it will be seen that the courts have refused to construe, as giving a right to successive renewals, language much stronger in favor of such a right than the language in the lease here under consideration.

Since all of the terms of the agreement as contained in the instrument are not so inseparably connected and interdependent that if the option agreement was not included then the lease would not be a binding executory contract, we must agree with the language of Mr. Justice Wenke, Associate Justice of the Supreme Court of the state of Nebraska, speaking for the court in *Wright v. Barclay,* 151 Neb 94, 98, 36 NW 2d 645:

> "We think an option contained in a lease to purchase the property and so destroy the tenancy is not one of the terms of the tenancy itself. While it may be made a provision of a lease and incorporated therein it is, nevertheless, a provision outside of the terms which regulate the relations between the parties as landlord and tenant."

See also, *Carter v. Frakes,* 303 Ky 244, 197 SW2d 436. And we ourselves have said, in speaking of a lease of real property with an option to purchase: "While the contract of sale remains dormant or unexerted, necessarily, the lease is in full operation and effect, with all the incidents and implied obligations which result from the relation of landlord and tenant. The intent is that the lease shall remain intact while the contract of sale remains unexecuted * * *. The two contracts could not be operative and co-exist, and hence, the contract of sale could not have the effect to modify or otherwise affect any provision of the lease, express or implied, while it was in force." *Powell v. D. S. & G. R. R. R. Co.,* 16 Or 33, 36, 16 P 863.

■ Since the option is a wholly separate and independent covenant contained in the lease, and not a necessary or implied part of the tenancy, there remains the essential question,—Is the renewal clause sufficiently certain in its terms to create a lease perpetual?

■ The great weight of authority is to the effect that, as heretofore stated, the law does not favor perpetual leases or covenants for continued renewals tending to create a perpetuity. And the courts and text writers state that the intention to create a perpetual lease or to enter into a covenant of continued renewal must be expressed in "plain and unambiguous terms", 51 CJS 606, Landlord and Tenant, § 61, and "the language employed" must "clearly and unambiguously" indicate "the intention and purpose of the parties", 32 Am Jur 813, Landlord and Tenant, § 968; the intention must be "expressed in unequivocal terms", 3 Thompson on Real Property, perm ed, 237, § 1174. See also Annotations, 39 ALR 280, supra.

■ The term "from year to year", in connection with a renewal right, is construed almost universally to provide for but a single renewal, the courts stating that the words do not in themselves import an intention to provide for perpetual renewals, such as the clear and unambiguous words "in perpetuity", "forever", or words of similar import. *Krug v. Deering Implement Co.,* 239 Iowa 157, 30 NW2d 729, and cases cited therein; *Tischner v. Rutledge,* 35 Wash 285, 77 P 388.

■ The words "for a like period of one year" do not aid the defendant for they import no more than that the term of renewal shall be on a yearly basis.

The instrument before us provides for but a single renewal of the lease.

Our former opinion is withdrawn and the decree

of the circuit court is reversed with directions to enter a decree in conformity with this opinion.

LATOURETTE, J., dissenting.

The renewal provision in the lease: "Lessee shall have the option of renewal of this lease, on the same rental basis and on the same terms, from year to year, for a like period of one year" is ambiguous. We have held many, many times that where a written document is ambiguous, we must look to the entire instrument to ascertain the intent of the parties. *Eggen v. Wetterborg*, 237 P2d 970, 193 Or 145, *Hardin et al. v. Dimension Lumber Co.*, 140 Or 385, 13 P2d 602. In my opinion this well-established rule has been totally disregarded by the majority. The prevailing opinion proceeds on the theory that the language of the renewal clause alone is the guiding star and that all other clauses of the lease bearing on the question are of no importance.

In addition to what was said in my former opinion, there is another matter which further confirms my belief that the original parties in the lease intended a renewal for more than one year. According to the testimony of Mr. Feike, the attorney who drew duplicate original leases for the parties, the duplicate leases, at the time of their execution, contained the following provision:

"It being understood that lessee will be given credit on said purchase price of the amount of $100 per month for each month of rental paid to lessor during the life of this lease *or any renewal thereof*." (Italics supplied.)

This provision was in the lease retained by defendant which is in evidence, having been recorded with the county clerk. Plaintiffs introduced in evidence as Exhibit 1 a purported duplicate original of the lease

retained by Gibbs and wife, the original lessors. The clause "or any renewal thereof" was penned out in Exhibit 1 and there was substituted therefor the words "or any rental thereof". The substituted language is meaningless. The plaintiffs or the original lessors, Gibbs and wife, did not testify at the trial.

Since this alteration was not accounted for, we have a right, in my opinion, to indulge in any reasonable inference detrimental to plaintiffs' position that the intention of the parties was to create but one renewal.

The word "any" is a word of flexible meaning and broadly inclusive. It may have reference to more than one. See 3A Words and Phrases (Perm Ed) 53 et seq. It is quite obvious to me that either the original lessors or plaintiffs made the change, believing and hoping that it would go unnoticed for the purpose of obscuring the real intent of the parties, to-wit, successive renewals.

"Any renewal" as used in the lease in my opinion implies more than one renewal. If the lessors had intended only one renewal, it was within their power to have the lease so written. Where a lease is doubtful or uncertain as to its meaning, it will be construed in the tenant's favor. *Weddle v. Parrish,* 135 Or 345, P. 295, 454.

Construing the lease in its entirety and considering the unexplained alteration of the lease in a clause pregnant with significance, I am of the opinion that the parties intended successive renewals of the lease, until the $100 a month rental payment absorbed the $26,000 purchase price, unless the option was sooner exercised.

I dissent.