Argued July 12, affirmed July 23, 1971

HUBBARD ET UX, *Appellants, v.*
VAUGHAN ET UX, *Respondents.*

487 P2d 86

*Robert R. Dickey,* Medford, argued the cause and filed a brief for appellants.

*Ross G. Davis,* Medford, argued the cause for respondents. With him on the brief were Harbison, Kellington & Kellington.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This in an action by the purchasers of a farm to recover from the sellers of the farm the sum of $3,500 allegedly due under the terms of a previous lease-option agreement for improvements previously made by the purchasers as tenants under that agreement. The case was tried by the court, without a jury. Plaintiffs appeal from an adverse judgment.[1]

The sole issue on appeal is whether, under the terms of the lease-option agreement, dated September 1, 1962, the lessees were to be reimbursed for improvements made by them to the sum of $3,500 only in the event that the lease expired without exercise of the option and possession of the farm was returned to the lessors, or whether they were also entitled to such reimbursement in the event that they exercised the option to purchase the farm, as they did shortly before expiration of the five year term of the lease.

The contract provision in controversy reads as follows:

"1. Lessee shall have the right to make, at their own expense, such capital improvements as are necessary. Lessee shall be compensated therefor by Lessor at the termination of this lease for the cost and labor, less the agreed upon depreciation of such improvements. However, in no event shall the compensation exceed the sum of $3,500.00 In the mak-

---

[1] The original complaint in this case was filed on December 1, 1967, but the case was not tried until December 3, 1970, over three years later. The judgment appealed from was entered on December 16, 1970.

ing of such improvements, Lessee agrees to keep the premises free and clear of any mechanics', material or labor liens. *Upon the termination of this lease, and the payment of the amounts determined to be paid by Lessor to Lessee, subject to restrictions given above, all improvements thereon shall become the property of Lessor.* As soon after the execution of this lease as is practical, weather and other circumstances permitting, a permanent fence line between the leased premises and the adjoining ranch owned by Doreen Vaughan, shall be constructed in the manner and using the materials as shall be determined by mutual agreement of the parties. The materials shall be furnished at the expense of Lessor and the labor in the construction of said fence shall be equally provided by Lessor and Lessee. *Upon the termination of this lease, the property shall be returned to Lessor by Lessee in at least as good condition as it now is,* together with all improvements thereon including said line fence, fair wear and tear and damage by fire excepted. Lessee shall not commit waste upon the property and shall manage and use the same in a good husband-like manner." (Emphasis added)

The foregoing provision was the first of four paragraphs relating to the leasing of the farm for a period of five years and was followed by a fifth and final paragraph providing for an option to the lessee to purchase the farm for $60,000, with not less than $15,000 as a down payment and the balance in monthly installments over a 10-year period, all as set forth in a contract of sale to be prepared at that time. The lease-option agreement was prepared by defendants' attorney.

By letter dated July 20, 1967 (and prior to the expiration of the five-year period on September 1, 1967), plaintiffs' attorney notified defendants of the

exercise by plaintiffs of the option to purchase the farm. That same letter stated that:

"Upon the contract being reduced to proper form, we will cause the same to be executed and delivered to you with the down payment of $15,000.00, less $3,500.00, representing the improvements which have been placed on the property by the Hubbards."

On November 7, 1967, a proposed contract of sale, as prepared by defendants' attorney was delivered to plaintiffs' attorney, providing for a down payment of $15,000 and of payment of the balance of $45,000 in monthly payments, making a total of $60,000, as the agreed purchase price. Reference was made to the fact that plaintiffs were then in possession under the lease-option agreement and would be entitled to possession "as contract purchasers" immediately upon execution of the contract.

By letter dated November 10, 1967, plaintiffs' attorney returned to defendants' attorney the contract, as executed by them, together with a draft in the sum of $15,264.63. That letter, over two pages in length, described in detail each of various items considered in computing that amount, including the "down payment" of $15,000 and rent since September 27th, the prorating of an irrigation assessment and real property taxes, and concluded with the statement that:

"As far as I can see, this terminates the transaction except for the reserve account which you are planning on setting up to cover the mortgage payments."

Thus, in closing the sale of the farm no deduction of $3,500 was made from the down payment of $15,000, as previously demanded by plaintiffs' attorney.

Seven days later, however, by letter dated No-

vember 17, 1967, from plaintiffs' attorney directly to defendants, demand was made under paragraph 1 of the lease-option agreement for payment within 10 days of $3,500 for capital improvements made by plaintiffs on the farm.

In support of plaintiffs' contention that they are entitled to reimbursement in the sum of $3,500 for improvements made by them on the farm, under the terms of the lease-option agreement, plaintiffs' contend that in construing the agreement "its meaning must be resolved in favor of the Hubbards," since it was prepared by defendants' attorney. While such a rule of interpretation is sometimes appropriate when the terms of a contract are ambiguous, in this case plaintiffs' attorney has expressly stated that "in the instant case the language of the agreement seems quite clear."

After considering the matter, including provisions of the lease-option agreement, the trial judge entered findings and conclusions which included the following:

"It is the opinion of this Court that the language of paragraph I is clear and unambiguous. The language, 'Lessee shall be compensated therefor by lessor at the termination of this lease for the cost and labor, less the agreed upon depreciation of such improvements,' could be given the interpretation placed upon it by the plaintiffs in the absence of the following language found later in the paragraph: 'Upon the termination of this lease, and the payment of the amounts determined to be paid by lessor to lessee, subject to restrictions given above, all improvements thereon shall become the property of lessor.' It is clear to the Court that it was the intent of the parties that the defendants reimburse the plaintiffs only in the event they failed to exercise their option and not when the lease was extinguished by the exercise of the option

which terminated the relationship of landlord and tenant and would give to the plaintiffs the benefit of all of the improvements. * * *."

We agree. The same conclusion is also supported by the further sentence of the same paragraph that "Upon the termination of this lease, the property shall be returned to Lessor by Lessee in at least as good condition as it now is, together with all improvements thereon * * *."

Upon examining the lease-option agreement as a whole we thus conclude that in using the words "termination of the lease" in paragraph 1, with reference to reimbursement for improvements made by the tenant, the intent of the parties was that such reimbursement was to be made in the event that the lease was "terminated" in the sense that the farm, including the improvements, would be returned to the lessor. Conversely, we conclude that in using these words in that paragraph the parties did not intend that such "reimbursement" be made in the event that the lessee exercised the option to purchase the farm, as provided in the final paragraph of that agreement.

To construe the agreement in the manner contended for by the plaintiffs would also, in our opinion, require the reaching of an unfair and unreasonable result, which courts will avoid if possible, consistent with a reasonable interpretation of the agreement and in the absence of clear language to the contrary. See 3 Corbin on Contracts 210-11, § 552.

Plaintiffs contend that such a result does not "construe the contract," but would make a new contract and one different than that agreed upon by the parties. We disagree and believe that the interpretation of the

lease-option agreement by the trial judge was entirely consistent with the intent of the parties at the time of entering into the agreement and that such an intent is also confirmed by the subsequent conduct of the parties and their attorneys at the time of the closing of the subsequent contract for sale of the farm, as previously described.

Holding, as we do, that such was the intent of the parties, it is not necessary to consider defendants' contention that the exercise by plaintiffs of the option to purchase the farm extinguished the lease and "all its incidents," including the provision for reimbursement for improvements made by the lessee.[®]

For all of these reasons, the judgment of the trial court is affirmed.

Affirmed.

---

[®] In support of that contention defendants cite Powell v. D.S. and G.R.R.R. Co., 16 Or 33, 36, 16 P 863 (1888); and McCreight et ux v. Girardo, 205 Or 223, 238, 280 P2d 408, 287 P2d 414 (1955).