MORGAN et al,
*Respondents,*

*v.*

BAUNACH et al,
*Defendants,*
JOHNSTON et al,
*Appellants.*

(A8201-00582; CA A26744)

684 P2d 589

Ronald Allen Johnston, Portland, argued the cause for appellants. With him on the briefs were John F. Reynolds and McCormick & Reynolds, Portland.

J. Bradford Shiley, Portland, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This appeal involves two parcels of commercial real estate and the respective parties' rights to them under Agreements to Purchase and leases executed the same day. Plaintiffs brought an action in ejectment seeking to recover possession of the properties and damages for wrongful withholding and failure to make lease payments. Defendants Johnston counterclaimed for specific performance of the Agreements to Purchase. After a trial without a jury, the court ruled that plaintiffs were entitled to immediate possession of the properties and denied defendants' counterclaim. The court also awarded damages against defendants Johnston and defendants Talmon-L'Armee for wrongful withholding, and against defendants Baunach for failure to make lease payments. Only the Johnstons and the Talmon-L'Armees appeal. Because we conclude that the trial court improperly characterized the transaction and the legal obligations flowing therefrom, we reverse.

On November 17, 1976, plaintiffs, as vendors, and defendants Baunach, as vendees, executed the following "Agreement to Purchase" the Lori-Dell Apartment complex:

"WITNESSETH: That in consideration of the mutual covenants and agreements herein contained, the seller agrees to sell unto the buyer, and the buyer agrees to purchase from the seller all of the following described lands and premises * * * for the sum of Two Hundred Sixty Thousand Dollars ($260,000.00) hereinafter called the purchase price, in part payment of which the buyer assumes and agrees to pay a contract or mortgage * * * the unpaid principal balance of which is $164,000.00 (approximately) together with the interest hereafter to accrue on said contract or mortgage according to the terms thereof; the buyer agrees to pay the balance of said purchase price to the order of the seller at the times and in amounts as follows, to-wit:

"One payment in an amount equal to the difference between the unpaid principal balance on the above mentioned mortgage on the date of payment under this contract and the purchase price of Two Hundred Sixty Thousand Dollars ($260,000.00) assuming that the mortgage had been paid when due and on time.

"* * * * *

"The buyer shall be entitled to possession of said lands on November, 1981, and may retain such possession so long as he is not in default under the terms of this contract. The buyer agrees that at all times he will keep the buildings on said premises, now or hereafter erected, in good condition and repair and will not suffer or permit any waste or strip thereof; that he will keep said premises free from mechanic's and all other liens and save the seller harmless therefrom and reimburse seller for all costs and attorney's fees incurred by him in defending against any such liens; that he will pay all taxes hereafter levied against said property, as well as all water rents, public charges and municipal liens which hereafter may be imposed upon said premises, all promptly before the same or any part thereof become past due; that at buyer's expense, he will insure and keep insured all buildings now or hereafter erected on said premises against loss or damage by fire (with extended coverage) in an amount not less than $260,000.00 in a company or companies satisfactory to the seller, with loss payable first to the seller and then to the buyer, as their respective interests may appear and all policies of insurance to be delivered to the seller as soon as insured. Now if the buyer shall fail to pay any such liens, costs, water rents, taxes or charges or to procure and pay for such insurance, the seller may do so and any payment so made shall be added to and become a part of the debt secured by this contract and shall bear interest at the rate aforesaid, without waiver, however, of any right arising to the seller for buyer's breach of contract.

"* * * * *

"And it is understood and agreed between said parties that time is of the essence of this contract, and in case the buyer shall fail to make the payments above required, or any of them, and the payments to become due on said contract or mortgage, and interest, or any of them, punctually within ten days of the time limited therefor, or fail to keep any agreement herein contained, then the seller at his option shall have the following rights: (1) to declare this contract null and void, (2) to declare the whole unpaid principal balance of said purchase price with the interest thereon at once due and payable and/or (3) to foreclose this contract by suit in equity * * *.

"This contract may not be assigned by buyers without the prior written consent of the sellers approving the buyers assignee. The sellers expressly agree that they shall not unreasonably without [sic] their consent to, and acceptance of, buyers assignee.

"* * * * *

"In case suit or action is instituted to foreclose this contract or to enforce any of the provisions hereof, the buyer agrees to pay such sum as the court may adjudge reasonable as attorney's fees to be allowed plaintiff in said suit or action and if an appeal is taken from any judgment or decree of the trial court, the buyer further promises to pay such sum as the appellate court shall adjudge reasonable as plaintiff's attorney's fees on such appeal."

The parties also executed a substantially identical "Agreement to Purchase" the Cross Roads apartment complex. Almost simultaneously, plaintiffs and defendants Baunach executed lease agreements, whereby the Baunachs agreed to lease each complex for a five-year period, from November 17, 1976, to November 17, 1981. Under the terms of the leases, the Baunachs agreed to assume and pay all sums due under the terms of the mortgage on each property, to pay an additional monthly rental charge and to undertake various other standard lease obligations.

In March, 1981, defendants Baunach attempted to tender full payment under the Agreements to Purchase, but plaintiffs refused the tender, stating that they were not obligated to accept payment until November 17, 1981. On April 15, 1981, defendants Baunach sold their interest under the Agreement to Purchase relating to Lori-Dell to Exchange Partners, Inc. (EPI), which immediately assigned its rights to defendants Johnston. On April 27, 1981, the Baunachs conveyed their interest in Cross Roads to a syndicate of investors, who forthwith assigned their rights to defendants Talmon-L'Armee.

As of November 17, 1981, the amounts due plaintiffs under the Agreements to Purchase were approximately $96,000 on the Lori-Dell complex and $71,000 on Cross Roads. Although all mortgage payments had been made through that date, lease payments were not made after October, 1981. On November 1, 1981, the Baunachs' attorney, Tarlow, offered plaintiffs either $50,000 or $80,000 in cash (it is not clear from the record), plus certain contract equities claimed to be worth about $180,000, to conclude both transactions. On November 30, 1981, Smith, plaintiffs' attorney, wrote Tarlow, stating that the offer was being considered and that it was his understanding that the Baunachs were unable to pay the

balance owing. During the month of December, 1981, plaintiffs rejected the Baunachs' offer and a subsequent offer. At trial, Smith testified that both before and after November 17, 1981, Tarlow had informed him that the Baunachs could not, and would not, perform. Tarlow denied having made those statements, and John Baunach denied having authorized Tarlow to make any such remarks. On January 7, 1982, Smith advised Tarlow that, because the Baunachs had failed to make timely payment, their interests had automatically ceased and that plaintiffs desired to take immediate possession of the properties. This action followed.

On March 1, 1982, the Baunachs renewed their November 1, 1981, offer by letter, stating, "We would appreciate your consideration of this offer as we simply have no other way to pay you the cash at this time." Plaintiffs rejected that offer.

On April 7, 1982, the Baunachs assigned all their interests in the Lori-Dell Agreement to Purchase to defendants Johnston, who thereafter offered plaintiffs $96,101 and then $96,359 for Lori-Dell. After also acquiring the various interests in Cross Roads, on November 10, 1982, defendants Johnston offered plaintiffs $71,000 for that complex. Plaintiffs also rejected those offers. At trial, testimony was offered to prove that defendants Johnston were presently ready, willing and able to purchase both complexes.

The issue is whether the plaintiffs-vendors properly declared and effectuated a forefeiture of the vendees' interests under the Agreements to Purchase. The trial court found that the transaction as a whole amounted to a five-year lease of the properties with an option to purchase that expired of its own terms when defendants failed to tender the purchase price in November, 1981. Defendants, on the other hand, contend that the agreements are, as a matter of law, land sale contracts and that the Baunachs' rights thereunder cannot be terminated without notice and a reasonable opportunity to cure. *See Elsasser v. Wilcox,* 286 Or 775, 779, 596 P2d 974 (1979).

Whether an instrument is a contract of sale or a mere option is determined by the nature of the obligations that it imposes. If it binds one party to sell and the other to purchase at a stipulated price, then it is a contract of sale. *Aspinwall, Executive, v. Ryan et al.,* 190 Or 530, 535, 226 P2d 814 (1951);

*Spencer v. Bales,* 108 Or 339, 345, 216 P2d 746 (1923). A document is an option only if it gives the buyer the absolute discretion to pay money and imposes no obligation on the buyer to purchase. *McCreight et ux v. Girardo,* 205 Or 223, 233-34, 280 P2d 408, 287 P2d 414 (1955). For the purpose of determining whether an agreement is a contract of sale or an option, the intention of the parties is to be garnered from the language used within the four corners of the instrument, if possible. *McCreight et ux v. Girardo, supra,* 205 Or at 236.

■      Here, the Agreements to Purchase impose a present obligation on plaintiffs to sell and on defendants Baunach to buy the properties at a stipulated price, and a present obligation on the part of the Baunachs to assume and pay an underlying mortgage and an obligation to pay the entire balance "on November, 1981." They also require the Baunachs to pay "water rents, public charges, and * * * liens," and "to insure and keep insured all buildings."

The agreements further set forth liabilities and penalties to be imposed on the Baunachs in the event that they "fail to make payments above *required,* or any of them." (Emphasis supplied.) Clearly, the payments were mandatory rather than discretionary. Finally, the agreements give plaintiffs the usual rights of a vendor in the event of default, including the right to declare a forfeiture, to foreclose or to accelerate the balance due and to foreclose the contract in equity, and provide for attorney fees in the event of "suit or action * * * to enforce any of the provisions hereof." Clearly, plaintiffs were entitled to require the Baunachs to pay the purchase price; they had the right to initiate a suit for specific performance of the agreements. *See Renard v. Allen,* 237 Or 406, 391 P2d 777 (1964). A characterization of the Agreements to Purchase as options would be directly contrary to their express provisions.

We must, however, attempt to construe the Agreements to Purchase and the leases together; although neither document refers to the other, they were executed at the same time as part of the same transaction. The only explanation for the way in which these transactions were documented is that there were tax reasons. The Agreements to Purchase provided that the purchasers were entitled to possession "on November, 1981," five years after they were executed. The

leases gave the lessee the right to immediate possession and the right to continue in possession for five years, so long as there was no default under the leases. If all payments were made under the leases, automatically there would be no default under the Agreements to Purchase until the balloon payment fell due in November, 1981. However, it was possible for there to be a default under the leases without there being a default under the agreements, so long as the vendees made the mortgage payments required to be made and performed their other obligations under the agreements. If that had occurred, the vendees (as lessees) would have lost the right to possession of the properties, but their rights as vendees would not have been disturbed.

For all of the foregoing reasons, we treat the rights of the parties in this litigation as governed by the Agreements to Purchase, which we conclude are land sale contracts, the terms of which provide for installments in the form of mortgage payments, with a final balloon payment of the entire contract balance due "on November, 1981,"[1] the time at which the vendees were entitled to possession.

When a land sale contract gives the vendor alternative remedies on default by the purchaser, the right of forfeiture cannot be exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice. *Elsasser v. Wilcox, supra,* 286 Or at 779; *Epplett v. Empire Inv. Co., Inc.,* 99 Or 533, 194 P 461, 541-42, 194 P 700 (1921); *Braunstein v. Trottier,* 54 Or App 687, 695, 635 P2d 1379 (1981). Plaintiffs implicitly concede that they did not provide defendants Baunach with the form of notice required by *Elsasser,* but contend that they were excused from providing such notice because of the Baunachs' repeated expression of their inability to make the required payments. Although some cases have held that no notice of forfeiture is necessary when it has been shown that to provide notice would be "a mere idle ceremony," *Roth Develop. v. John Gen'l Contr.,* 263 Or 561, 573, 503 P2d 493 (1972); *Epplett v. Empire Inv. Co., Inc., supra,* 99 Or at 543, in every case in which the court has actually excused notice, there was some

---

[1] Whether we interpret this provision as requiring payment of the lump sum on November 17, 1981, the date on which the leases expired, or some other date is irrelevant.

unequivocable act on the part of the vendee indicating an intention to abandon the contract. *See, e.g., Tovrea v. Alderman,* 211 F Supp 865, 867 (D Or 1962), *aff'd* 330 F2d 512 (9th Cir 1964); *Epplett v. Empire Investment Co., supra,* 99 Or at 542.

Here, the evidence showed, at best, that defendants Baunach stated several times that they did not have cash funds necessary to complete the transactions. The evidence also showed, however, that they made those statements in the course of attempting to negotiate methods of paying the balance of the contract price. It is undisputed that the Baunachs never expressed the idea that they were "ending the matter" or abandoning the contracts and that at all times after November, 1981, they or their assignees continued to make the required mortgage payments. On these facts, we cannot say that the Baunachs' statements excused the requirement of notice. Because in most cases it is impossible to discern whether a vendee's expressed inability to perform is real or contrived for the sake of negotiation, the better rule is that a vendee's statement of inability to pay, standing alone, is an insufficient basis for permitting a non-judicial forfeiture without notice. Because plaintiffs failed to provide defendants with a reasonable and defined opportunity to cure, their declaration of forfeiture was ineffective.

We turn now to the question whether defendants Johnston are entitled to specific performance of the contracts. Plaintiffs do not appear to challenge the Johnstons' assertion that they are ready, willing and able to perform, but rather they contend that, because the assignment was made without plaintiffs' consent, the Johnstons cannot, as assignees, compel specific performance. As the court stated in *Nielsen v. Baldridge,* 173 Or 555, 568, 146 P2d 754 (1944), however, when

"* * * a provision in a contract for the sale of real estate against the assignability of a contract without the consent of the vendor is not followed by any provisions providing for the forfeiture of the contract if it is assigned in violation of such provision, the assignment of the contract at the time when the entire purchase price is due, and is tendered by the assignee, does not operate to forfeit the contract, and is not a valid excuse for the vendor's refusal to carry it out."

There is no reason why that principle should not be applied to the present case. As assignees of the Baunachs, the Johnstons

are entitled to assert all of their rights under the Agreements to Purchase, including the right of tender. Although the testimony at trial showed that the Johnstons were then ready, willing, and able to perform, their financial circumstances may have changed. We do not know what the present balance is under the contracts or whether the Johnstons have remained in possession.

Accordingly, we reverse the judgment against defendants Johnston and Talmon-L'Armee and remand with instructions to determine the amounts owing under the contracts and for the entry of a judgment granting defendants Johnston specific performance of the contracts on their payment of all sums determined to be due, including reasonable rental, if any be owing, within such time as the court deems just and equitable.

The judgment is reversed, except the portion thereof awarding damages against defendants Baunach; remanded with instructions.