# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1854

MUTUAL ASSIGNMENT AND INDEMNIFICATION COMPANY,

*Plaintiff-Appellant,*

v.

LIND-WALDOCK & COMPANY, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 99 C 6828—**David H. Coar**, *Judge.*

———————

SUBMITTED MARCH 24, 2004—DECIDED APRIL 9, 2004

———————

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Two men are engaged in shady financial dealings, perhaps with the goal of evading restitution obligations. One of them, Keith Maydak, appears to be a fugitive from justice. See *Maydak v. United States*, 2003 U.S. App. LEXIS 25182 (D.C. Cir. Dec. 11, 2003). He has filed documents using a mail drop in Pennsylvania as a return address. The other, Paul Lee, is imprisoned, and Maydak purports to be his assignee and spokesman. This opinion, together with the papers that Maydak has filed in this court, will be sent to the United States

Attorneys for the Northern District of Illinois and the Eastern District of Pennsylvania, so that they may conduct whatever investigation may be appropriate. In the meantime we must resolve the appeal.

Lee opened a commodity-trading account with Lind-Waldock & Co. (We suspect that Maydak may have supplied the money so that he could trade despite his legally precarious position, but that suspicion is unimportant for current purposes.) According to the complaint, Lind- Waldock & Co. made a margin call and, when funds were not forthcoming, liquidated part of Lee's investment. The complaint seeks damages under both state and federal law. This seems substantively weak—in futures markets, unlike stock markets, margin calls must be met immediately, as accounts are marked to market daily. Nothing in either state or federal law requires a commodities futures merchant to give prisoners extra time to meet margin calls; anyone who chooses to trade in a market where wire transfers are the norm and immediate action the requirement must meet those standards or accept the consequences. Nonetheless, the district court declined to dismiss all of Lee's claims on Lind-Waldock's motion under Rule 12(b)(6). *Mutual Assignment & Indemnification Co. v. Lind-Waldock & Co.*, 2001 U.S. Dist. LEXIS 14092 (N.D. Ill. Aug. 31, 2001).

As the caption on the district court's opinion (and ours) implies, Lee was not the only plaintiff. The complaint alleges that he had assigned his claim to "Mutual Assignment and Indemnification Company" (which we abbreviate to MAIC), and that Lee himself had been named as a plaintiff only as a fallback in the event that the court refused to enforce the assignment. The complaint did not describe the nature or legal status of this "Company." On appeal Maydak calls it a proprietorship, with himself as proprietor. Yet proprietors must litigate in their own names. See Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). To

file suit in a business name is to imply that the venture has its own personality. The complaint treats MAIC as an entity distinct from Maydak, which it may well be. State records in Pennsylvania show that before filing this suit Maydak registered "Mutual Assignment and Indemnification Company LLP" as a "limited liability partnership"; if the assignment of Lee's claim is to that partnership, then MAIC's suit should have been dismissed forthwith, as Maydak is no attorney and lacks authority to pursue litigation on behalf of anyone other than himself. See *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993); *Navin v. Park Ridge School District*, 270 F.3d 1147, 1149 (7th Cir. 2001). The district judge did not broach this possibility; instead he dismissed MAIC's claim on the ground that the contract between Lee and Lind- Waldock contains an anti-assignment clause. 2001 U.S. Dist. LEXIS 14092 at *19-20.

Eighteen months later, Lee and Lind-Waldock filed a joint stipulation of dismissal under Fed. R. Civ. P. 41. The document does not reveal whether Lind-Waldock paid Lee anything, though it does refer to a settlement agreement. A lawyer from Neal, Gerber & Eisenberg signed on behalf of Lind-Waldock. Lee signed "individually and on behalf of Mutual Assignment and Indemnification Company, a _____ company." (The blank is in the original and was not filled in.) The notice of dismissal is transparently defective—for, whether MAIC is a proprietorship or a partnership, Lee cannot represent it in court, as he is not a member of the bar in the Northern District of Illinois (or anywhere else). A notice must be signed by "the parties" or their agents, see Rule 41(a)(1)(ii), and neither MAIC nor anyone entitled to speak on its behalf consented. Counsel for Lind-Waldock should have understood this, even if Lee did not. Nonetheless the district court entered judgment on the stipulation and dismissed the suit with prejudice. Maydak, who says that he was taken unawares, has ap-

pealed. Perhaps a motion under Fed. R. Civ. P. 59, pointing out to the district judge that Lee could not bind MAIC, would have solved the problem, but post-judgment motions (like "exceptions" of all kinds) are not essential to preserve a right to assert error. MAIC's claim was dismissed without its consent; it is entitled to appellate review.

The judgment was erroneous, as we have said. But the error was harmless if, as the district judge held in 2001, the assignment is invalid, for then MAIC lost nothing to which it is legally entitled. The district court dismissed MAIC's claim because the agreement between Lee and Lind-Waldock provides that "[a]ny rights that [Lee] may have pursuant to this Agreement shall not be assigned, transferred, sold or otherwise conveyed." The district court apparently assumed that "rights . . . pursuant to this Agreement" includes the right to damages for breach *of* the Agreement, in addition to rights *under* the Agreement. Yet Illinois law, which the parties applied in the district court, is to the contrary. Illinois distinguishes between rights and duties under an agreement and rights to damages following breach. Thus if a contract between Plácido Domingo and the Lyric Opera contains an anti-assignment clause, and Domingo decides that he is too pooped to participate, he can't send Neil Shicoff in his stead even if the opera is Offenbach's *Tales of Hoffmann*. But if Domingo sings, and the opera does not pay, he can transfer to Shicoff (or anyone else) the right to collect. See *Lain v. Metropolitan Life Insurance Co.*, 388 Ill. 576, 578, 58 N.E.2d 587, 588 (1944); *Westville v. Loitz Brothers Construction Co.*, 165 Ill. App. 3d 338, 519 N.E.2d 37 (4th Dist. 1988). The assignment from Lee to MAIC is the transfer of a right to collect, not of a right to make trades or otherwise act under the contract. It is therefore compatible with Illinois law, and the district court erred in dismissing MAIC. This also may mean that Lind-Waldock has paid the wrong party in settlement; and it cannot use payments to Lee to reduce its potential

liability to MAIC (or, for that matter, to the beneficiaries of any restitution orders outstanding against Lee or Maydak).

That we have been discussing the effect of Illinois law brings out another potential problem: it is unclear whether the district court had subject-matter jurisdiction. The complaint purports to rest in part on §4b(a) of the Commodity Exchange Act, 7 U.S.C. §6b(a), but this is an anti-fraud rule, and implementing margin rules by selling collateral is not fraud. Invocation of §4b(a) may be an effort to manufacture jurisdiction over a state-law claim for breach of contract. The amount in controversy appears to fall short of $75,000, and the complaint does not reveal any citizenship details. Maydak's citizenship likely is his domicile before going on the lam. See *Lloyd v. Loeffler*, 694 F.2d 489, 490 (7th Cir. 1982). As for Lee, we need to know the state of his citizenship before his imprisonment, not just where his prison is located. See *Denlinger v. Brennan*, 87 F.3d 214 (7th Cir. 1996). Lind-Waldock is a limited liability company, which means that it is a citizen of every state of which any member is a citizen; this may need to be traced through multiple levels if any of its members is itself a partnership or LLC. See *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998). Lind-Waldock has not provided any of these details; indeed, it has disdained the opportunity to file a brief on appeal, and thus courted the adverse outcomes (such as our ruling on the validity of the assignment) that may ensure when judges hear only one side. On remand the district court should determine whether MAIC is a proprietorship (if no, Maydak cannot represent it; if yes, Maydak should be substituted as the litigant) and whether diversity jurisdiction exists. If diversity jurisdiction is untenable, then even if the claim under §4b is non-frivolous, the district court may choose to relinquish supplemental jurisdiction under 28 U.S.C. §1367(c)(3).

The judgment with respect to MAIC is vacated, and the matter is remanded for proceedings consistent with this opinion.

**A true Copy:**

**Teste:**

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-9-04