**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230760-U

Order filed February 24, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| STRATFORD REALTY, LLC, an Illinois limited liability company and STRATFORD NASSIM, LLC, an Illinois limited liability company, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| | ) | Appeal No. 3-23-0760 |
| Plaintiffs-Appellants, | ) | Circuit No. 23-CH-34 |
| | ) | |
| v. | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| | ) | Judge, Presiding. |
| VILLAGE OF BLOOMINGDALE, a municipal corporation, | ) ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:   Plaintiffs have standing to pursue claim to enforce the terms of a contract they were assigned even though defendant did not consent to the assignment when the claim alleged that the only remaining obligation was payment by defendant.

¶ 2       Plaintiffs, Stratford Realty, LLC and Stratford Nassim, LLC, acquired the Stratford

Square Shopping Mall in Bloomingdale, Illinois (property), via a deed in lieu of foreclosure.

Plaintiffs received an assignment of intangibles as part of that acquisition which referred to a redevelopment agreement between the original owner and defendant, the Village of Bloomingdale (Village). They then brought suit against the Village to enforce the redevelopment agreement, alleging that the agreement required the Village to make certain reimbursement payments it now refused to pay. Plaintiffs appeal following the circuit court's grant of the Village's motion to dismiss, arguing that the court erred in finding that they lacked standing to pursue the matter. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                      I. BACKGROUND

¶ 4        Plaintiffs purchased the property in 2019. Prior to their purchase, in December 2007, FMP Stratford, LLC (FMP) entered into a redevelopment agreement with the Village where FMP agreed to make certain improvements to the property and the Village agreed to reimburse it for some of those expenses. Specifically, the redevelopment agreement provided that Phase 1 improvements would cost FMP approximately $80 million to complete. The Village agreed to reimburse FMP up to $20 million for the expenses incurred for the completion of Phase 1. Those payments would not begin until FMP provided the Village evidence that it incurred and paid for eligible reimbursement costs.

¶ 5        The Village's reimbursements were to be paid out of its collection of a Business District Retailers' Occupation Tax and a Business District Service Occupation Tax that the Village imposed specifically for the purpose of reimbursing FMP for the Phase 1 improvements. The Village agreed to pay FMP the taxes collected each quarter and would continue to do so until reimbursements equaled $20 million or until 23 years after the execution of the agreement, whichever occurred first. The reimbursement period is scheduled to expire in September 2030.

¶ 6        Section 11.20 of the redevelopment agreement provided that it was assignable with the Village's consent as follows:

> "[Developer] may assign in whole this Agreement to a wholly-owned subsidiary, and may designate such subsidiary as the successor Developer under this Agreement. [Developer] may further assign in whole this Agreement with the express written consent of the Village. *** Such required written consent from the Village shall not be unreasonably withheld or delayed."

¶ 7        FMP completed the Phase 1 improvements in October 2011. Shortly thereafter, FMP sold the property to FMC Stratford Mall Members, LLC (Five Mile), and the Village consented to that assignment. To document the assignment and approval thereof, the Village and Five Mile signed an agreement entitled "Consent, Assignment and Assumption Agreement." This agreement highlighted that "[Developer] hereby sells, assigns and sets over all of its right, title, and interest in, too [*sic*] and under the Redevelopment Agreement to Five Mile as accrue from and after the Effective Date." It also provided that "Five Mile hereby assumes and agrees to be responsible and obligated for all the financial and other duties, liabilities and responsibilities of [developer] that exist under the Redevelopment Agreement and accrue from and after the Effective Date." No additional assignment provision was included in the consent agreement.

¶ 8        Plaintiffs obtained the property in October 2019 via a deed in lieu of foreclosure. When executing the deed, plaintiffs and Five Mile also signed an assignment of intangibles. This assignment document listed the 2007 redevelopment agreement with the Village as a relevant intangible property and further acknowledged that the required consent for the assignment by the Village had not yet been obtained. The Village was not a party to the agreement between Five Mile and plaintiffs.

3

¶ 9        Upon execution of the documents with Five Mile, plaintiffs requested the Village approve the assignment. The Village has yet to provide its approval. However, since the assignment to plaintiffs, the Village has continued to collect the taxes it imposed without providing any reimbursement payments.

¶ 10       Plaintiffs filed a complaint in the circuit court alleging that they acquired title from Five Mile through the deed in lieu of foreclosure, which included the assignment of certain intangibles, including the redevelopment agreement. It further alleged that FMP had completed the required improvements in October 2011 and that the Village had reimbursed FMP for approximately $4,000,000 of the contemplated $20 million. The complaint alleged that the only obligation remaining under the 2007 redevelopment agreement was the Village's obligation to provide reimbursement payments, either until it paid $20 million or until September 2030, whichever occurred first. Plaintiffs argued that the Village unreasonably withheld consent and sought a declaratory judgment finding that plaintiffs were the proper assignees, the Village unreasonably withheld consent of the assignment and must approve of it, and that the Village must continue to make reimbursement payments to plaintiffs pursuant to the terms of the 2007 redevelopment agreement.

¶ 11       The Village then filed a motion to dismiss under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)), arguing that the plaintiffs did not have standing to pursue their claim. The Village asserted that the 2011 consent agreement did not provide an assignment provision, thus Five Mile was not permitted to assign the agreement to any other parties. The Village argued that the assignment to plaintiffs was ineffective because Five Mile was not permitted to assign its rights under the agreement and thus lacked standing.

4

¶ 12       The circuit court held a hearing on November 22, 2023, where it granted the Village's motion to dismiss. The court explained that "the 2011 agreement is the operative agreement, and the plain language of that agreement acknowledges that the consent of the Village is required for it to be effective. I think on that basis alone, the motion to dismiss should be granted." It also stated that it was necessary for the Village to be a party to the agreement for an assignment to occur.

¶ 13       Plaintiffs now appeal.

¶ 14                                    II. ANALYSIS

¶ 15       This matter appears before us after a decision on a motion to dismiss under section 2-619 of the Code. 735 ILCS 5/2-619 (West 2022). A section 2-619 motion to dismiss admits a complaint's legal sufficiency but asserts that there is an affirmative matter outside the complaint that defeats the claim. See *id.*; *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. "Where standing is challenged by way of a motion to dismiss, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff[']s favor." *U.S. Bank National Ass'n v. Sauer*, 392 Ill. App. 3d 942, 946 (2009). Further, the "[e]xhibits attached to the complaint become part of the pleadings, and the facts stated in such exhibits are considered the same as having been alleged in the complaint." *Outboard Marine Corp. v. James Chisholm & Sons, Inc.*, 133 Ill. App. 3d 238, 245 (1985). The propriety of a section 2-619 dismissal for lack of standing is a question of law that we review *de novo*. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶¶ 19 -20.

¶ 16       We must first address the Village's argument that the 2011 consent agreement prohibits any assignment because it is silent as to future assignments. The Village appears to argue that the 2011 consent agreement between it, FMP, and Five Mile is an entirely new redevelopment

5

agreement separate from the 2007 redevelopment agreement. However, the 2011 consent agreement is not a new contract that is all-encompassing; it is an agreement to consent to the assignment of the 2007 redevelopment agreement and to allow Five Mile to assume the rights as the developer under it. Indeed, the 2011 consent agreement is titled "Consent, Assignment and Assumption Agreement." Under the 2011 consent agreement, with the consent of the Village, Five Mile, as assignee, acquired all the interests of the assignor FMP. See *Community Bank v. Carter*, 283 Ill. App. 3d 505, 508 (1996) (an assignment transfers all right, title, and interest to the assignee); see also *Matter of Estate of Martinek*, 140 Ill. App. 3d 621, 629-30 (1986) ("The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor."). Thus, with the execution of the 2011 consent agreement, Five Mile acquired the right to act with the same rights and abilities that FMP had under the 2007 redevelopment agreement. These rights that Five Mile received included the right to assign the agreement to plaintiffs unless the 2011 consent agreement provided otherwise. See *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 779 (2009).

¶ 17        The 2011 consent agreement contains no provision prohibiting additional assignments—there is no reference to assignments at all. "As a general rule, in the absence of an express contractual prohibition, the rights and obligations under a contract may be assigned or delegated." *Morris Silverman Management Corp. v. Western Union Financial Services, Inc.*, 284 F. Supp. 2d 964, 982 (N.D. Ill. 2003); see Restatement (Second) of Contracts § 317(2) (1981) (a contractual right may be assigned unless the assignment (1) creates a material change to the duties, burdens, impairments, or values presented under contract; (2) is specifically prohibited by law; or (3) is precluded by contract). The language of the 2011 consent agreement provides that Five Mile will receive *all* FMP's rights and interests under the 2007 redevelopment agreement,

6

which includes the right to assign. Accordingly, the Village's position that the 2011 consent agreement does not allow for assignment because it is silent on the topic is meritless.

¶ 18     We next consider the effect of Five Mile's assignment to the plaintiffs when the Village did not consent to it as required by section 11.20 of the 2007 redevelopment agreement. While the Village argues that an effective assignment cannot occur without its consent, plaintiffs assert that the lack of consent is inconsequential to the effectiveness of the assignment because the only remaining obligation is to provide payment for the reimbursement amount.

¶ 19     The purpose of requiring a party to have standing before pursuing a claim against another party is to preclude a person who has no interest in a particular controversy from filing a cause of action and to ensure that issues are raised and argued only by parties with a real interest in the controversy's outcome. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). A plaintiff must complain of some injury in fact to a legally cognizable interest in order to have standing. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The plaintiff must have an actual controversy, not be "merely curious or concerned" about an issue. *Potter v. Ables*, 242 Ill. App. 3d 157, 158-59 (1993). The plaintiff must also have an injury that is (1) "distinct and palpable," (2) "fairly traceable" to the defendant's actions, and (3) substantially likely to be prevented or corrected if the court grants the requested relief. *Greer*, 122 Ill. 2d at 492-93.

¶ 20     The lack of standing negates a plaintiff's cause of action, which requires the circuit court to dismiss the action. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). A plaintiff need not specifically allege standing. *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 45 (2005). It is the defendant's burden to plead and prove lack of standing. *Id.*

7

¶ 21    Case law indicates that, under the Restatement (Second) of Contracts, provisions outlining restrictions on assignments such as the one before us in the 2007 redevelopment agreement, requiring consent of the other party before executing an assignment, would not prohibit or restrict the assignment of all contractual rights:

> "A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, (a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation."

Restatement (Second) of Contracts (1981) § 322(2); see *Bank of America, N.A. v. Moglia*, 330 F.3d 942, 948 (7th Cir. 2003) (noting that Illinois follows the view expressed in the Restatement (Second) of Contracts § 322(2)). It should make no difference whether the original party or its assignee sues to recover money allegedly owed under a fully performed contract when all other duties or obligations have been satisfied. Restatement (Second) of Contracts (1981) § 317 cmt. d ("When the obligor's duty is to pay money, a change in the person to whom the payment is to be made is not ordinarily material.").

¶ 22    The Illinois Supreme Court has adopted a similar rule:

> "After [a] contract [with an anti-assignment provision] has been fully executed and nothing remains to be done except to pay the money, a different rule applies[.] The element of the personal character, credit, and substance of the party with whom the contract is made is no longer material, because the contract has been completed and all that remains to be done is to pay the amount due. The claim becomes a chose in action, which is assignable and enforceable."

8

*Ginsburg v. Bull Dog Auto Fire Insurance Ass'n of Chicago*, 328 Ill. 571, 573 (1928) (applying rule to permit assignment of insurance policy despite anti-assignment provision). This rule has been applied elsewhere in more recent years. See *Omicron Safety & Risk Technologies,, Inc. v. UChicago Argonne, LLC*, 181 F. Supp. 3d 508, 510-12 (N.D. Ill. 2015) (allowing an assignment despite anti-assignment provision when a claim was brought for damages from a breach of contract); see also *Mutual Assignment and Indemnification Co. v. Lind-Waldock & Co., LLC*, 364 F. 3d 858, 861 (2004) (reasoning that "Illinois distinguishes between rights and duties under an agreement and rights to damages following breach."). Accordingly, an assignee has standing to enforce the original contract where the only remaining obligation is payment even when the original contract contains limitations on assignments.

¶ 23　　　　Here, plaintiffs allege in their complaint that all the obligations they would have under the 2007 redevelopment agreement were completed by FMP in October 2011. At this stage in the proceeding, we must take this allegation as true. *U.S. Bank National Association*, 392 Ill. App. 3d at 946. Taking this as true, the only action remaining under the contract is the Village's obligation to reimburse the developer for the work performed. The complaint clearly alleges that the Village had an outstanding obligation to continue making quarterly reimbursement payments to the developer of the property until September 2030, or until it paid $20 million to the developer. Thus, any assignment to receive payment from the Village would not require consent, and plaintiffs have sufficiently alleged in their complaint that they have received injury due to the Village's actions because they have not been paid the amount due under the 2007 redevelopment agreement.

¶ 24　　　　The Village argues that the assignment provision in the 2007 redevelopment agreement contains a material requirement that the assignee must be of the same financial character as the

9

assignor, and such requirement eliminates the possibility of automatic assignments. However, *Ginsburg* clearly finds that the character of the assignee is no longer material when all that remains of the contract is payment. 328 Ill. at 573. Here, plaintiffs' financial character is immaterial when they have sufficiently alleged that the only remaining obligation is for the Village to make the required reimbursements. See *id.* Moreover, the plaintiffs also allege that they have the same financial abilities as their assignor, which we again must take as true. See *U.S. Bank National Association*, 392 Ill. App. 3d at 946.

¶ 25 Plaintiffs have made sufficient allegations in their complaint that they received an effective assignment, giving them an interest in pursuing this matter and an injury resulting from the Village's failure to make reimbursement payments. See, *e.g.*, *In re Estate of Lay*, 2018 IL App (3d) 170378, ¶ 13 (a party must have a personal interest to have standing). Therefore, they have standing to bring suit against the Village to enforce the terms of the 2007 redevelopment agreement.

¶ 26 We note that, even if further obligations remain under the contract, an assignee may still have standing against an obligor when the obligor has not consented to the assignment and the obligations of the contract have not yet been met. While there are no cases in Illinois that directly address this issue, other jurisdictions have found that assignment without consent may be permitted when the anti-assignment provision does not expressly provide that the assignment will be void if consent is not obtained. See, *e.g.*, *Sullivan v. International Fidelity Insurance Co.*, 96 A.D.2d 555, 555 (N.Y. App. Div. 1983) (finding there is a distinction between "assignments made in contravention of a prohibition clause" and a "personal covenant against assignments"); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (assignments are enforceable unless there is clear language that an improper assignment will be

void.); *Morgan v. Baunach*, 684 P.2d 589, 595 (Or. App. Ct. 1984) (finding that an anti-assignment provision that is not followed by a forfeiture provision is not a valid excuse for the obligor to refuse to fulfill its obligations). However, because we find that plaintiffs have standing when they have sufficiently alleged facts to indicate all obligations under the contract were met other than final payment, we need not address this issue here.

¶ 27                                III. CONCLUSION

¶ 28        The judgment of the circuit court of Du Page County is reversed and remanded for further proceedings not inconsistent with this order.

¶ 29        Reversed and remanded.